**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

---

ZELDA BRODOWICZ, individually and on behalf
of all others similarly situated,

      Plaintiff,

v.

VIRGIN SCENT, INC. D/B/A ARTNATURALS,
INC., WALMART, INC.,

      Defendants

No._____

**Jury Trial Demanded**

**Class Action Complaint**

---

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Zelda Brodowicz, who files this Class Action Complaint against the below-enumerated Defendants as alleges and avers as follows.

### I.    INTRODUCTION

1.    This case arises from adulterated, misbranded, and unapproved hand sanitizer products that were designed, manufactured, marketed, distributed, packaged, and/or sold by Defendants (identified and defined *infra*) in the United States. The specific hand sanitizer products currently include Artnaturals product or brand name, as well as others including but not limited to Lavender & Herbs, TrueWash, Huangjisoo, The Crème Shop, Star Wars Mandalorian, Body Prescriptions, Born Basic, Beauty Concepts, PureLogic, Miami Carry On, Natural Wunderz, Puretize, Clean-Protect-Sanitize, (collectively, the "Hand Sanitizer Products"). These Hand Sanitizer Products are not merchantable, and are not of the quality represented by Defendants named herein.

2.    Defendants' Hand Sanitizer Products contain dangerously high levels of benzene, a hazardous genotoxic class I human carcinogen. These dangerously high levels of benzene are

not disclosed by Defendants, and were only discovered very recently when a third-party pharmacy tested Defendants' Hand Sanitizer Products.

3.      The Unites States Food and Drug Administration ("FDA") regulates the sale of hand sanitizer products in the United States.  These products are considered over-the-counter ("OTC")  drugs.  As such, these products, including Defendants' Hand Sanitizer Products, must comply with the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, the FDA regulations and guidance promulgated thereunder, as well as analogous state statutory and common law schemes pertaining to the safety, quality, and sale of OTC drugs.

4.      Defendants sought to profit at consumers' expense during the unprecedented COVID-19 pandemic by false labelling and selling Hand Sanitizer Products that contained undisclosed levels of benzene, a known human carcinogen.  Benzene is typically used in the manufacture of gasoline and other industry chemicals or textiles.  Because of its genotoxic and carcinogenic potential, in 2011 the United States Environmental Protection introduced regulations that lowered benzene content in gasoline.[1]  Meanwhile, Plaintiff and other class members directly unknowingly purchased Defendants' Hand Sanitizer Products to apply the product to their bodies (especially so during the current COVID-19 pandemic) when the products contained undisclosed levels of benzene impurities well beyond the levels that would be permissible in gasoline.

5.      Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons who paid for Defendants' adulterated, misbranded, and/or unapproved Hand Sanitizer products illegally manufactured, sold, labeled, marketed, and distributed in the United States. Defendants' Hand Sanitizer Products contained high levels of benzene.  Defendants' Hand Sanitizer Products were of lesser quality and were adulterated, misbranded, and/or unapproved

---

[1] EPA Gasoline Mobile Source Air Toxics, *available at* https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics (last visited Mar. 24, 2021).

(and thereby rendered worthless) through unacceptable and undisclosed levels of benzene.

6.      At all times during the period alleged herein Defendants represented and warranted to consumers and others that their Hand Sanitizer Products were comprised of the materials disclosed on the products' labels, and were merchantable and fit for use.   Yet, Defendants knowingly, fraudulently, and/or negligently manufactured, labeled, marketed, and/or sold their Hand Sanitizer Products that contained extremely high levels of the carcinogenic substance benzene.  Defendants have been unjustly enriched through the sale of these knowingly adulterated and/or misbranded products.   Defendants' conduct also constitutes actionable fraud, consumer fraud, negligence, and other violations of law as set forth herein.

## II.      PARTIES

7.      Plaintiff Zelda Brodowicz is a resident of Hollywood, Florida.   During the class period, Plaintiff paid money for one or more of Defendants' Hand Sanitizer Products.  Specifically, Plaintiff purchased at least one or more of the following Hand Sanitizer Products, manufactured and sold at retail to Plaintiff and other consumers as follows:   Artnaturals (manufactured or distributed by Defendant Virgin Scent, and purchased by Plaintiff at a store operated by Defendant Walmart).   Defendants expressly and impliedly warranted to Plaintiff that the Hand Sanitizer Products that Plaintiff purchased were merchantable and of the represented quality.   But in fact, Plaintiff purchased product that was not of the represented merchantability or quality.   Plaintiff would not have paid money for Defendants' Hand Sanitizer Products but for their concealment of the benzene levels in those products; indeed, as the benzene levels were above the acceptable levels mandated by the FDA and analogous state laws, Defendants' Hand Sanitizer Products could not be sold in the United States (including Florida) in the first place.

8.      Defendant Virgin Scent, Inc. d/b/a Artnaturals ("Virgin Scent") is a Delaware corporation with its principal place of business in Gardena, California.   At all times material to

this action, Virgin Scent has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and/or misbranded Hand Sanitizer Products in the United States, including but not limited to Artnaturals.

9.      Defendant Walmart, Inc. ("Walmart") a Delaware corporation with its principal place of business in Bentonville, Arkansas.  At all times material to this action, Walmart has been engaged in the marketing or sale of adulterated and/or misbranded Hand Sanitizer Products in the United States, including but not limited to Artnaturals.

10.      Upon information and belief, one or more other entities manufactured, distributed, marketed, and/or sold Hand Sanitizer Products during the class period.  The true names, affiliations, and/or capacities of John Doe Defendants are not presently known.  However, each John Doe proximately caused damages to Plaintiff and other class members as alleged herein, and each John Doe is liable to Plaintiff and other class members for the acts and omissions alleged below as well as the resulting damages. Plaintiff will amend complaint to allege the true names and capacities of the John Does when evidence reveals their identities.

## III.   JURISDICTION AND VENUE

11.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

12.      This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407, and because Defendants have sufficient minimum contacts in Florida, and because Defendants have otherwise intentionally availed themselves of the markets within Florida through their business activities, such that the exercise of jurisdiction by this Court is proper and necessary.

13.     Venue is proper in this District because Plaintiff resides in this District, 28 U.S.C. § 1391(b)(1); "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(b)(2); and Defendants are subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

## IV.     FACTUAL ALLEGATIONS

### A.   Regulation of Over-The-Counter (OTC) Hand Sanitizer Products

14.     Over-the-counter (OTC) drugs are non-prescription drugs that are available for purchase without a prescription.  The FDA recognizes that OTC drugs "play an increasingly vital role in America's health care system.  OTC drugs are defined as drugs that are safe and effective for use by the general public without seeking treatment by a health professional."[2]  "[T]here are over 300,000 marketed OTC drug products[.]"[3]

15.     The FDA (and analogous state agencies or laws) requires that OTC drug labeling identify, *inter alia*, each active and inactive ingredient.[4]

16.     The FDA considers hand sanitizer products to be over-the-counter (OTC) drugs and regulates them as such:  "Hand sanitizers are over-the-counter (OTC) drugs regulated by FDA."[5]

17.     As OTC drugs, hand sanitizer products, *inter alia*, must meet prescribed standards for, *inter alia*, safety and efficacy; have standardized, FDA-approved drug labeling (*see, e.g.*, 21 C.F.R. 201.66); and are subject to current Good Manufacturing Practices (cGMP) regulations and state-law analogues.

---

[2] Drug Applications for Over-the-Counter (OTC) Drugs, *available at* https://www.fda.gov/drugs/types-applications/drug-applications-over-counter-otc-drugs (last visited Mar. 24, 2021).
[3] *Id.*
[4] Guidance for Industry, National Uniformity for Nonprescription Drugs – Ingredient Listing for OTC Drugs, *available at* https://www.fda.gov/media/72250/downloadi (last visited Mar. 24, 2021).
[5] Q&A for Consumers, Hand Sanitizers and COVID-19, *available at* https://www.fda.gov/drugs/information-drug-class/qa-consumers-hand-sanitizers-and-covid-19 (last visited Mar. 24, 2021).

### B.  Adulterated or Misbranded Drugs

18.      The manufacture and sale of any adulterated or misbranded drug (OTC or prescription) is prohibited under federal law,[6] as well as under analogous state laws.

19.      The introduction into commerce of any misbranded or adulterated or misbranded drug is similarly prohibited under federal law,[7] as well as under analogous state laws.

20.      Similarly, the receipt in interstate commerce of any adulterated or misbranded or drug is also unlawful under federal law,[8] as well as under analogous state laws.

21.      Among the ways a drug may be adulterated and/or misbranded are:

a.   "if it has been prepared, packed, or held under unsanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health;"[9]

b.   "if . . . the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice…as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess;"[10]

c.   "If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and … its quality or purity falls below, the standard set forth in such compendium. …"[11]

---

[6] 21 U.S.C. § 331(g).
[7] 21 U.S.C. § 331(a).
[8] 21 U.S.C. § 331(c).
[9] 21 U.S.C. § 351(a)(2)(A).
[10] 21 U.S.C. § 351(a)(2)(B).
[11] 21 U.S.C. § 351(b).

    d.   "If . . . any substance has been (1) mixed or packed therewith so as to reduce its quality or strength or (2) substituted wholly or in part therefor."[12]

22.    A drug is misbranded:

    a.   "If its labeling is false or misleading in any particular."[13]

    b.   "If any word, statement, or other information required…to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."[14]

    c.   If the labeling does not contain, among other things, "the proportion of each active ingredient…"[15]

    d.   "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users. …"[16]

    e.   "If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein."[17]

    f.   "if it is an imitation of another drug;"[18]

    g.   "if it is offered for sale under the name of another drug."[19]

---

[12] 21 U.S.C. § 351(d).
[13] 21 U.S.C. § 352(a)(1).
[14] 21 U.S.C. § 352(c).
[15] 21 U.S.C. § 352(e)(1)(A)(ii)
[16] 21 U.S.C. § 352(f).
[17] 21 U.S.C. § 352(g).
[18] 21 U.S.C. § 352(i)(2).
[19] 21 U.S.C. § 352(i)(3).

h.  "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[20]

i.  If the drug is advertised incorrectly in any manner;[21] or

j.  If the drug's "packaging or labeling is in violation of an applicable regulation…"[22]

23.  Various state statutory and common law regimes expressly or impliedly adopt or parallel the aforementioned federal provisions.

24.  As articulated in this Complaint, Defendants' unapproved OTC drugs were adulterated and/or misbranded per the foregoing, as described more fully below.

### C.  OTC Drugs That Do Not Match FDA-Approved Content and Labeling Are New, Unapproved OTC Drugs

25.  The FDA's website provides the definition for a drug:

The Federal Food Drug and Cosmetic Act (FD&C Act) and FDA regulations define the term drug, in part, by reference to its intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and "articles (other than food) intended to affect the structure or any function of the body of man or other animals." Therefore, almost any ingested or topical or injectable product that, through its label or labeling (including internet websites, promotional pamphlets, and other marketing material), is claimed to be beneficial for such uses will be regulated by FDA as a drug.  The definition also includes components of drugs, such as active pharmaceutical ingredients.[23]

26.  21 C.F.R. § 210.3(b)(7) defines an "active ingredient" in a drug as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body

---

[20] 21 U.S.C. § 352(j).
[21] 21 U.S.C. § 352(n).
[22] 21 U.S.C. § 352(p).
[23] https://www.fda.gov/ForIndustry/ImportProgram/ImportBasics/RegulatedProducts/ucm511482.htm#drug.

of man or other animals. The term includes those components that may undergo chemical change in the manufacture of the drug product and be present in the drug product in a modified form intended to furnish the specified activity or effect."[24]  An "inactive ingredient" is "any component other than an active ingredient."[25]

27.    An OTC drug that contains an ingredient that is different than those disclosed on the drug's label, or at levels not disclosed on the drug's label, is a new and unapproved drug.[26]

28.    At the very least and alternatively, drugs with different and dangerous ingredients than their brand-name counterparts are adulterated or misbranded under federal and state law, and the sale or introduction into commerce of adulterated or misbranded drugs is illegal.[27]

29.    The inclusion of additional ingredients (e.g., benzene) at undisclosed levels, and potentially other deviations, renders a drug unapproved, adulterated, and of lesser quality than that reflected in FDA-approved versions of the drug.

30.    Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that Plaintiff's state law claims alleged herein do not seek to impose any obligations on Defendants, beyond what is already required of them under federal law.  Rather, the state law claims here seek to enforce state statutory and common law principles that are parallel to, and not addition to or pose an obstacle to, any obligations imposed on Defendants by federal law.

### D.  FDA Interim Limits on Impurities in Hand Sanitizer Products

31.    Prior to 2020, the FDA did not allow any benzene or similar ethanol-based impurities in hand sanitizer products because of the public health risk.

---

[24] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?fr=210.3.
[25] *See* 21 C.F.R. § 210.3(b)(8).
[26] *See generally* 21 C.F.R. § 310.3(h).
[27] *See generally* https://www.justice.gov/opa/pr/generic-drug-manufacturer-ranbaxy-pleads-guilty-and-agrees-pay-500-million-resolve-false (last accessed June 6, 2019).

32.     However, the United States Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020 in connection with the then-emergent COVID-19 pandemic.[28]

33.     Because of the public's grave concern over COVID-19, sales of hand sanitizer products, including Defendants' Hand Sanitizer Products, increased at a prodigious rate. Additionally, other companies sought to meet the public's demand and introduce new hand sanitizer products.

34.     In response to the public crisis and tightened supply, the FDA issued a Temporary Policy for Preparation of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency (COVID-19), Guidance for Industry, in early March 2020 ("Interim Guidance").[29] The FDA Guidance, which currently remains in effect, was updated March 27, 2020, April 15, 2020, June 1, 2020, August 7, 2020, and most recently February 10, 2021.

35.     This FDA's Interim Guidance was issued and immediately effective "to communicate its policy for the temporary preparation of certain alcohol-based hand sanitizer products by firms that register their establishment with FDA as an over-the-counter (OTC) drug manufacturer, re-packager, or re-labeler to prepare alcohol-based hand sanitizers under the circumstances described in this guidance ('firms') for the duration of the public health emergency[.]"[30]

36.     The FDA observed that hand sanitizer products' public health importance had greatly increased during the COVID-19 crisis because "[h]and hygiene is an important part of the response to COVID-19. Washing hands often with soap and water for at least 20 seconds is essential, especially after going to the bathroom; before eating; and after coughing, sneezing, or

---

[28] HHS Public Health Emergency Declaration, *available at* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (last visited Mar. 24, 2021).
[29] *Available at* https://www.fda.gov/media/136289/download (last visited Mar. 24, 2021).
[30] *Id.* at 1.

blowing one's nose. If soap and water are not readily available, the Centers for Disease Control and Prevention (CDC) recommends consumers use an alcohol-based hand sanitizer that contains at least 60 percent alcohol (also referred to as ethanol or ethyl alcohol)."[31]

37.     Accordingly, in view of the public emergency, the FDA announced that it would not take regulatory action "against firms that prepare alcohol-based hand sanitizer for consumer use and for use as health care personnel hand rubs for the duration of the public health emergency[,]" provided, however, that the hand sanitizer products met certain criteria.[32]

38.     Among the criteria set forth by the FDA were quality standards and specifications hand sanitizer products.  The criteria were informed by "FDA's experience in which data submitted by fuel ethanol manufacturers producing ethanol via fermentation and distillation indicated that at least some fuel ethanol products included harmful chemicals, including gasoline and benzene, which is a known human carcinogen (cancer-causing agent)."[33]

39.     Because of the risk associated with dangerous impurities such as benzene, the FDA set interim limits for the use of the following ethanol-related impurities that can be present in hand sanitizer products:[34]

| Table 1 | |
|---|---|
| Impurity | Interim Limit under this policy |
| Methanol | NMT 630 ppm |
| Benzene | NMT 2 ppm |
| Acetaldehyde | NMT 50 ppm* |
| Acetal (1,1-diethoxyethane) | NMT 50 ppm |
| Sum of all other impurities | NMT 300 ppm |

40.     Notably, the FDA's interim limits "does not apply to hand sanitizer gel or foam

---

[31] *Id.* at 2.
[32] *Id.* a 3.
[33] *Id.* at 10.
[34] *Id.*

products because different or additional ingredients may impact the quality and potency of the product."[35]

41.     The FDA also advised that any firm wishing to use ethanol-related substances in their hand sanitizer product "should test the ethanol (or have a third party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment."[36]

### E.   Defendants Did Not Disclose the Unacceptable Levels of Benzene in Their Hand Sanitizer Products

42.     A manufacturer is required to give adequate directions for the use of a pharmaceutical drug such that a "layman can use a drug safely and for the purposes for which it is intended,"[37] and conform to requirements governing the appearance of the label.[38]

43.      "Labeling" encompasses all written, printed or graphic material accompanying the drug or device.[39]

44.     If a manufacturer labels a drug but omits or misstates ingredients, that renders the drug misbranded.[40]

45.     Prior to the FDA's Interim Guidance, the labeling for Defendants' Hand Sanitizer Products did not disclose the presence of any benzene.

46.     This was consistent with FDA's view, as the agency had not issued formal guidance prior to COVID-19 that sanctioned *any* levels of benzene in hand sanitizer products.

47.     Following the FDA's Interim Guidance first issued in March 2020, trace amounts of a benzene impurity, at 2ppm (parts per million), would have been permissible.

---

[35] *Id.* at 7.
[36] *Id.*
[37] 21 C.F.R. § 201.5.
[38] 21 C.F.R. § 801.15.
[39] *Id.* 65 Fed. Reg. 14286 (March 16, 2000).
[40] 21 C.F.R. § 201.6; 201.10.

48.     However, upon information and belief, Defendants did not amend their products' labels to disclose the presence of *any* benzene in their Hand Sanitizer Products.  Defendants did not disclose, on their products' labels or otherwise, whether they tested their Hand Sanitizer Products for benzene as directed by the FDA.

49.     On March 24, 2021, Valisure, an independent pharmacy submitted a Citizen Petition to the FDA concerning its testing of various Hand Sanitizer Products.

50.     Valisure is an "online pharmacy currently licensed in 38 states and an analytical laboratory that is ISO 17025 accredited by the International Organization for Standardization." Valisure also is registered with the Drug Enforcement Administration and the FDA.

51.     Valisure conducted its own independent testing of various hand sanitizer products, including Defendants' Hand Sanitizer Products.

52.     The tests conducted by Valisure show that Defendants' Hand Sanitizer Products contain high levels of benzene.

53.     The testing protocol utilized by Valisure, detected benzene in Defendants' Hand Sanitizer Products at levels much higher than zero (the level permissible prior to COVID-19) as well as the interim limits set forth in the FDA's Interim Guidance first published in March 2020.

54.     Valisure's testing found benzene present at levels in the Hand Sanitizer Products ranging from 2.2ppm to 16.1ppm – all of which were over the 2ppm interim level (assuming it even applied to the product, i.e., if the product was not a gel or foam).

F.   **Each Defendant Had an Obligation to Test and Otherwise Ensure Its Hand Sanitizer Products Did Not Contain Dangerous, Undisclosed Benzene Impurities**

**1.   Manufacturer/Distributor Defendant(s)**

55.     As a manufacturer or distributor of an OTC drug, Virgin Scent had a duty to ensure that their Hand Sanitizer Products did not contain benzene impurities.

56.     Prior to the FDA's Interim Guidance, Virgin Scent had a duty to ensure that their Hand Sanitizer Products did not contain any benzene impurities, consistent with the FDA-approved labeling for any of their Hand Sanitizer Products.

57.     Virgin Scent did not disclose to Plaintiff, consumers, or otherwise that – prior to the FDA's Interim Guidance – any of its Hand Sanitizer Products contained *any* amount of benzene.

58.     Following the FDA's Interim Guidance, Virgin Scent did not disclose to Plaintiff, consumers, or otherwise that any of its Hand Sanitizer Products contained benzene far in excess of the interim limit set by the FDA.

59.     Upon information and belief, Virgin Scent did not take reasonable steps to test or otherwise assure that its Hand Sanitizer Products either did not contain any benzene (prior to the FDA's Interim Guidance) or did not contain benzene in excess of the FDA's interim limits (following issuance of the FDA's Interim Guidance).  Had Virgin Scent done so, they would have discovered, as Valisure was able to discover, that its products contained benzene at levels in excess of the FDA's interim limits.

60.     Virgin Scent represented and warranted to its customers, consumers, and the public in general that its Hand Sanitizer Products were of merchantable quality and complied with federal and analogous state law, and did not contain undisclosed impurities such as benzene.

### 2.  Retailer Defendant(s)

61.     As a retail seller of an OTC drug, Walmart had a duty to ensure that the Hand Sanitizer Products they sourced and in turn sold to consumers did not contain benzene impurities. Prior to the FDA's Interim Guidance, Walmart had a duty to ensure that their Hand Sanitizer Products did not contain any benzene impurities, consistent with the FDA-approved labeling for any of their Hand Sanitizer Products.

62.     Walmart did not disclose to Plaintiff, consumers, or otherwise that – prior to the FDA's Interim Guidance – any of its Hand Sanitizer Products contained *any* amount of benzene.

63.     Following the FDA's Interim Guidance, Walmart did not disclose to Plaintiff, consumers, or otherwise that any of its Hand Sanitizer Products contained benzene far in excess of the interim limit set by the FDA.

64.     Upon information and belief, Walmart did not take reasonable steps to test – either itself or requesting that its supplier test – or otherwise assure that its Hand Sanitizer Products either did not contain any benzene (prior to the FDA's Interim Guidance) or did not contain benzene in excess of the FDA's interim limits (following issuance of the FDA's Interim Guidance).  Had Walmart done so, they would have discovered, as Valisure was able to discover, that its products contained benzene at levels in excess of the FDA's interim limits.

65.     Walmart represented and warranted to its customers, consumers, and the public in general that its Hand Sanitizer Products were of merchantable quality and complied with federal and analogous state law, and did not contain undisclosed impurities such as benzene.

### G.  Plaintiff's Experience

66.     In March 2021, Plaintiff purchased Defendants' Hand Sanitizer Products at a Walmart location in Florida.

67.     Specifically, Plaintiff purchased for personal or household use two bottles of Artnaturals scent free hand sanitizer.

68.     Neither the products' label, nor anything else published by Walmart or Virgin Scent, disclosed that the product contained benzene, let alone at levels above the FDA's interim limits.

69.     In fact, these products are gels; as such, the FDA's interim limits do not even apply to them.

70.     Plaintiff relied on the representations and statements in the product label or otherwise in purchasing these Hand Sanitizer Products.  She would not have purchased them had she known that they contained benzene.

### H.  Fraudulent Concealment, Tolling, and Continuing Violations

71.     Plaintiff and other class members' causes of action could not and did not accrue until the date Valisure's Citizen Petition became public on March 24, 2021.

72.     Plaintiff and other class members exercised reasonable diligence but could not discover Defendants' wrongful conduct prior to Valisure's Citizen Petition.

73.     For instance, no Defendant revealed to the public that their Hand Sanitizer Product contained benzene or the levels of benzene, or that the products were adulterated, misbranded, and/or unapproved.

74.     To the contrary, each Defendant continued to represent and warrant that their Hand Sanitizer Products were merchantable, fit for their intended purpose, and were of the quality and composition as marketed.

75.     Because of this, Plaintiff and other class members did not discover, nor could they have discovered through reasonable and ordinarily diligence, each Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Defendants' false and misleading explanations, or obfuscations, lulled Plaintiff and other class members into believing that the prices paid for Hand Sanitizer Products were appropriate for what they believed to be non-adulterated or -non-misbranded drugs despite their exercise of reasonable and ordinary diligence.

76.     Alternatively, any statute of limitation or prescriptive period is equitably tolled on account of fraudulent concealment. Defendants each affirmatively concealed from Plaintiff and other class members their unlawful conduct. Each Defendant affirmatively strove to avoid disclosing their knowledge or the true nature of their Hand Sanitizer Products, and the fact that

those products were adulterated, misbranded, and/or contained benzene at all or above the FDA's interim limits.

77.     As a result of each Defendant's affirmative and other acts of concealment, any applicable statute of limitations affecting the rights of Plaintiff or other class members has been tolled.  Plaintiff and/or other class members exercised reasonable diligence by among other things promptly investigating and bringing the allegations contained herein.  Despite these or other efforts, Plaintiff were unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable this complaint to be filed sooner.

78.     Additionally, the revelations revealed by Valisure's Citizen Petition may be only the top of the iceberg.  Because of Defendants' and non-parties' ongoing fraud and deception, the full scope of Defendants' and non-parties' unlawful conduct is not yet known.

## V.     CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Defendants on Plaintiff's own behalf and on behalf of the Nationwide Class(es) defined below:

> All individuals and entities in the United States and its territories and possessions who, since at least January 1, 2015 to the present, paid any amount of money for a Hand Sanitizer Product (intended for personal or household use) that was manufactured, distributed, or sold by any Defendant.

80.     Plaintiff also alleges the following Florida Subclass:

> All individuals and entities in Florida and its territories and possessions who, since at least January 1, 2015 to the present, paid any amount of money for a Hand Sanitizer Product (intended for personal or household use) that was manufactured, distributed, or sold by any Defendant.

81.     Excluded from the Class(es)es are: (a) any judge or magistrate presiding over this

action, and members of their families; (b) Defendants and their employees, officers, directors, and agents; (c) Defendants' legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

82.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

83.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

84.     **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially millions of consumers nationwide. The Class(es)es are therefore so numerous that joinder of all members is impracticable.

85.     **Commonality**: Common questions of law and fact exist as to all class members, including but not limited to:

a.  Whether each Defendant made express or implied warranties to Plaintiff and other class members regarding their Hand Sanitizer Products;

b.  Whether each Defendant's Hand Sanitizer Products were adulterated, misbranded, or otherwise contained undisclosed benzene impurities, and the levels of such impurities;

c.  Whether Defendant violated cGMPs regarding the manufacture, sourcing, or testing of their Hand Sanitizer Products;

d.  Whether each Defendant falsely claimed that its Hand Sanitizer Products were merchantable, fit for intended purposes, and otherwise of the quality and composition represented;

e.  Whether each Defendant affirmatively or negligently misrepresented or omitted facts regarding its manufacture, sale, or testing of its Hand Sanitizer Products;

f. Whether Plaintiff and other class members have been injured as a result of each Defendant's unlawful conduct, and the amount of their damages;

g. Whether a common damages model can calculate damages on a class-wide basis;

h. When Plaintiff's and other class members' causes of action accrued; and

i. Whether Defendants fraudulently concealed Plaintiff's and other class member's causes of action.

86. **Typicality**: Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm. Plaintiff has substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

87. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and have retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff' claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

88. The elements of Rule 23(b)(2) are met. Defendants have acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class(es) as a whole.

89. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendants, the likelihood that individual class

members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTIES**

90.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

91.     This cause of action is alleged on behalf of all class members against all Defendants.

92.     Plaintiff, and each member of the Class(es), formed a contract with Defendants at the time Plaintiff and the other Class(es) members purchased Hand Sanitizer Products. The terms of the contract include the promises and affirmations of fact made by Defendants on the Hand Sanitizer Products' packaging and through marketing and advertising, including that the product would be of the quality and character as represented.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class(es) and Defendants.

93.     Each Defendant expressly warranted that its Hand Sanitizer Products were fit for its ordinary use, i.e., as an FDA-approved OTC drug, were safe and effective for intended use, and did not contain any undisclosed impurities.

94.     Each Defendant sold Hand Sanitizer Products that they expressly warranted were

-20-

compliant with cGMP and not adulterated or misbranded, or otherwise contained undisclosed levels of benzene or other impurities.

95.     Each Defendant's Hand Sanitizer Products did not conform to each Defendant's express representations and warranties because the product was not manufactured in compliance with cGMP and was adulterated and misbranded, or contained undisclosed impurities.

96.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose:   Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313;  Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313;  Conn. Gen. Stat. Ann. § 42a-2-313;  6 Del. Code. § 2-313;  D.C. Code. § 28:2-313;  Fla. Stat. Ann. § 672.313;  Ga. Code. Ann. § 11-2-313;  Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313;  810 Ill. Comp. Stat. Ann. 5/2-313;  Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313;  11 Me. Rev. Stat. Ann. § 2-313;  Md. Code. Ann. § 2-313;  Mass. Gen. Law Ch. 106 § 2-313;  Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313;  Miss. Code Ann. § 75-2-313;  Mo. Rev. Stat. § 400.2-313;  Mont. Code Ann. § 30-2-313;  Nev. Rev. Stat. U.C.C. § 104.2313;  N.H. Rev. Ann. § 382-A:2-313;  N.J. Stat. Ann. § 12A:2-313;  N.M. Stat. Ann. § 55-2-313;  N.Y. U.C.C. Law § 2-313;  N.C. Gen. Stat. Ann. § 25-2-313;  N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26;  Okla. Stat. tit. 12A § 2-313;  Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, *et seq.*; R.I. Gen. Laws § 6A-2-313;  S.C. Code Ann. § 36-2-313;  S.D. Stat. § 57A-2-313;  Tenn. Code Ann. § 47-2-313;  Tex. Bus. & Com. Code Ann. § 2-313;   Utah Code Ann. § 70A-2-313;  Va. Code § 8.2-313;  Vt. Stat. Ann. 9A § 2-313;  W. Va. Code § 46-2-313;  Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

97.     At the time that each Defendant marketed and sold its Hand Sanitizer Products,

they recognized the purposes for which the products would be used, and expressly warranted the products were cGMP compliant and not adulterated or misbranded, or did not contain undisclosed impurities.  These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and other class members including but not limited to express representations made in referring to their products as FDA-compliant (and compliant with analogous state law).

98.     Each Defendant breached its express warranties with respect to its Hand Sanitizer Products as they were not of merchantable quality, were not fit for their ordinary purpose, and did not comply with cGMP and was adulterated and misbranded, or contained undisclosed impurities.

99.     Plaintiff and each member of the Class(es) would not have purchased the Hand Sanitizer Products dad they known these drugs contained undisclosed benzene impurities, were adulterated or misbranded, or did not have the represented safety and efficacy profile.

100.    As a direct and proximate result of each Defendant's breach of warranty, Plaintiff and other class members have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Hand Sanitizer Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

### SECOND CAUSE OF ACTION
**BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY
AND FITNESS**

101.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

102.    This cause of action is alleged on behalf of all class members against all Defendants.

103.    At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied

warranty of merchantability and fitness for ordinary purpose:  Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314;  Ark. Code. Ann. § 4-2-314;  Cal. Com. Code § 2314;  Colo. Rev. Stat. § 4-2-314;  Conn. Gen. Stat. Ann. § 42a-2-314;  6 Del. Code. § 2-314;  D.C. Code. § 28:2-314;  Fla. Stat. Ann. § 672.314;  Ga. Code. Ann. § 11-2-314;  Haw. Rev. Stat. § 490:2-314;  Idaho Code § 28-2-314;  810 Ill. Comp. Stat. Ann. 5/2-314;  Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314;  La. Civ. Code Ann. Art. § 2520;  11 Me. Rev. Stat. Ann. § 2-314;  Md. Code. Ann. § 2-314;  Mass. Gen. Law Ch. 106 § 2-314;  Mich. Comp. Laws Ann. § 440.2314;  Minn. Stat. Ann. § 336.2-314;  Miss. Code Ann. § 75-2-314;  Mo. Rev. Stat. § 400.2-314;  Mont. Code Ann. § 30-2-314;  Nev. Rev. Stat. U.C.C. § 104.2314;  N.H. Rev. Ann. § 382-A:2-314;  N.J. Stat. Ann. § 12A:2-314;  N.M. Stat. Ann. § 55-2-314;  N.Y. U.C.C. Law § 2-314;  N.C. Gen. Stat. Ann. § 25-2-314;  N.D. Stat. § 41-02-314;  Ohio Rev. Code Ann. § 1302.27;  Okla. Stat. tit. 12A § 2-314;  Or. Rev. Stat. § 72.3140;  13 Pa. C.S. § 2314;  P.R. Laws. Ann. Tit. 31, § 3841, *et seq*.; R.I. Gen. Laws § 6A-2-314;  S.C. Code Ann. § 36-2-314;  S.D. Stat. § 57A-2-314;  Tenn. Code Ann. § 47-2-314;  Tex. Bus. & Com. Code Ann. § 2-314;   Utah Code Ann. § 70A-2-314;  Va. Code § 8.2-314;  Vt. Stat. Ann. 9A § 2-314;  W. Va. Code § 46-2-314;  Wash. Rev. Code § 62A 2-314;  Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

104.    Each Defendant was a merchant within the meaning of the above statutes.

105.    Each Defendant's Hand Sanitizer Products constituted "goods" or the equivalent within the meaning of the above statutes.

106.    Each Defendant was obligated to provide Plaintiff and other class members reasonably fit Hand Sanitizer Products for the purpose for which the product was sold, and to conform to the standards of the trade in which Defendants are involved such that the product was of fit and merchantable quality.

107.    Each Defendant knew or should have known that its Hand Sanitizer Products were

being manufactured and sold for the intended purpose, and impliedly warranted that their Hand Sanitizer Products were of merchantable quality and fit for that purpose.

108.    Each Defendant breached its implied warranty because each Defendant's Hand Sanitizer Products were not of merchantable quality, nor fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

109.    Plaintiff and other class members purchased the Hand Sanitizer Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

110.    The Hand Sanitizer Products were not altered by Plaintiff or other class members.

111.    As a direct and proximate result of each Defendant's breach of implied warranty, Plaintiff and other class members have been injured and suffered damages, in that Defendants' Hand Sanitizer Products they purchased was so inherently flawed, unfit, or unmerchantable as to have significantly diminished or no intrinsic market value.

**THIRD CAUSE OF ACTION**
**MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET SEQ*.**

112.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

113.    This cause of action is alleged on behalf of all class members against all Defendants.

114.    Each Defendant is a "warrantor" within the meaning of the Magnuson-Moss Warranty Act.

115.    Plaintiff and other class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act.

116.    Each Defendant expressly or impliedly warranted their Hand Sanitizer Products as alleged in the First and Second Causes of Action.

117.    Under 15 U.S.C. § 2310(d)(1), Plaintiff and other class members were "damaged

by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Plaintiff sues pursuant to this section to recover money damages and for legal and equitable relief on behalf of themself and the class members.

118.    No Defendant has acted on the opportunity to cure its failure with respected to its warranted Hand Sanitizer Products.

119.    Likewise, pursuant to 15 U.S.C. § 2310(d)(2), upon prevailing in this action, Plaintiff is entitled to receive an award of attorneys' fees and expenses and pray for the same.

**FOURTH CAUSE OF ACTION**
**FRAUD (AFFIRMATIVE MISREPRESENTATION, OMISSION, AND CONCEALMENT)**

120.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

121.    This cause of action is alleged on behalf of consumer class members against all Defendants.

122.    Defendants affirmatively misrepresented material facts including, *inter alia*, that their Hand Sanitizer Products with not compliant with cGMPs and/or were not adulterated and/or misbranded, or did not contain undisclosed benzene impurities.

123.    Defendants omitted material facts including, *inter alia*, that their Hand Sanitizer Products with not compliant with cGMPs and/or were not adulterated and/or misbranded, or contained undisclosed benzene impurities.

124.    Defendants' actions had the effect of fraudulently inducing customers to pay in whole or in part for Defendants' Hand Sanitizer Products – products which Defendants knew or should have known were did not comply with GMPs and/or were adulterated and/or misbranded,

or contained undisclosed benzene impurities. Plaintiff and other class members would not have purchased Defendants' Hand Sanitizer Products had they known the truth. Indeed, Plaintiff and other class members could not have paid for Defendants' Hand Sanitizer Products had they known the truth because Defendants' Hand Sanitizer Products were illegally manufactured, illegally distributed, and illegally sold to Plaintiff and class members based on Defendants' fraudulent misrepresentations and omissions.

125.     Defendants knew, or reasonably should have known, that their misrepresentations were materially false or misleading, or that the omission of material facts rendered such representations false or misleading.

126.     Defendants also knew, or had reason to know, that their misrepresentations and omissions would induce Class(es) members to pay for some or all of the cost of Defendants' Hand Sanitizer Products.

127.     Defendants' misrepresentations and omissions were material.

128.     Defendants' actively concealed their misrepresentations and omissions from the Class(es), government regulators, and the public.

129.     To the extent applicable, Defendants intended their misrepresentations and omissions to induce Plaintiff and other class members to pay for Defendants' Hand Sanitizer Products.

130.     But for these misrepresentations and omissions, Plaintiff and other class members would not have paid for Defendants' Hand Sanitizer Products.

131.     To the extent applicable, Plaintiff and other class members were justified in relying on Defendants' misrepresentations and omissions.   The same or substantively identical misrepresentations and omissions were communicated, to each Class(es) member, including through product labeling and other statements by Defendants.   No reasonable consumer would

have paid what they did for Defendants' Hand Sanitizer Products but for Defendants' unlawful conduct.  To the extent applicable, reliance may be presumed in these circumstances.

132.    Plaintiff and other class members were damaged by reason of Defendants' misrepresentations and omissions alleged herein.

**<u>FIFTH CAUSE OF ACTION</u>**
**NEGLIGENT MISREPRESENTATION AND OMISSION**
**(INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS**
**AGAINST ALL DEFENDANTS)**

133.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

134.    This cause of action is alleged on behalf of consumer class members against all Defendants.

135.    Each Defendant had or undertook a duty to accurately and truthfully represent to the quality, nature, and characteristics of its Hand Sanitizer Products.

136.    Each Defendant failed to exercise ordinary care in making representations (or in failing to disclose facts) concerning the quality, nature, and characteristics of its Hand Sanitizer Products.

137.    Each Defendant negligently misrepresented or omitted facts regarding the quality, nature, and characteristics of its Hand Sanitizer Products.

138.    Each Defendant's statements were false at the time the misrepresentations were made (or at the time omissions were not made).

139.    Each Defendant knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.  Each Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce Class(es) members to make purchases of each Defendant's Hand Sanitizer Products.

140.     As a direct and proximate result of each Defendant's acts and omissions described herein, Plaintiff and other class members have suffered harm, and will continue to do so.

141.     Each Defendant's misrepresentations or omissions were material and a substantial factor in Plaintiff' and other class members' paying for Hand Sanitizer Products.

142.     Each Defendant intended its misrepresentations or omissions to induce Plaintiff and Class(es) members to make purchases of Hand Sanitizer Products, or had reckless disregard for same.

143.     But for these misrepresentations (or omissions), Plaintiff and other class members would not have made purchases of Defendants' Hand Sanitizer Products.

144.     Plaintiff and other class members were justified in relying on Defendants' misrepresentations or omissions.  The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class(es) Member.

145.     Plaintiff and other class members were damaged by reason of each Defendant's misrepresentations or omissions alleged herein.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION LAWS**
**(INDIVIDUALLY AND ON BEHALF OF CONSUMER CLASS MEMBERS**
**AGAINST ALL DEFENDANTS)**

146.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

147.     This cause of action is alleged on behalf of all class members against all Defendants.

148.     Each Defendant has violated the consumer protection statutes as follows:

        a.     Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of Ala. Code § 8-19-1, *et seq*.;

b.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq*.;

c.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq*.;

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq*.;

e.    Defendants have violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq*.;

f.    Defendants have violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.;

g.    Defendants have violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

h.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq*.;

i.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq*.;

j.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code 2511, *et seq*.;

k.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq*.;

l.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*.;

m.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

n.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

p.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

q.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*; Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

w.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

x.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

y.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

z.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.0 10, *et seq.*;

bb.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

cc.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

dd.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ee.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

ff.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

gg.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

hh.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

ii.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 350, et seq.;

jj.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

kk.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

ll.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

mm.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

nn.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

oo.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

pp.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

qq.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

rr.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

ss.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

tt.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

uu.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

vv.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

ww.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

xx.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*; Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

yy.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

zz.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

aaa.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

149.    Each Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

150.    Each Plaintiff and other Class(es) Member is a consumer or person aggrieved by Defendants' misconduct within the meaning of the above statutes.

151.    To the extent applicable, each Defendant knew, intended, or should have known that their fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other class members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT

152.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

153.    This cause of action is alleged on behalf of all class members against all Defendants.

154.    As alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and other class members by virtue of the latter's paying for Defendants' Hand Sanitizer Products.

155.    Defendants profited immensely from introducing a carcinogen into the United States for human consumption. On top of that, because Defendants' Hand Sanitizer Products were adulterated and misbranded, their distribution and sale in the United States was illegal.

156.    Plaintiff and other class members were unjustly deprived of money obtained by Defendants as a result of the improper amounts paid for Defendants' Hand Sanitizer Products.  It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiff and other class members as a result of their wrongful conduct alleged in this Complaint.

157.    In the alternative to the other causes of actions alleged herein, Plaintiff and other class members have no adequate remedy at law.

158.    Plaintiff and other class members are entitled to seek and do seek restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of its wrongful conduct.

## EIGHTH CAUSE OF ACTION
### NEGLIGENCE

159.    Plaintiff re-allege and incorporate the preceding paragraphs as if fully set forth herein.

160.    This cause of action is alleged on behalf of all class members against all Defendants.

161.    Each Defendant owed a duty to Plaintiff and the Class(es) to use and exercise reasonable and due care in the manufacturing of its Hand Sanitizer Products.

162.    Each Defendant owed a duty to Plaintiff and the Class(es) to ensure that the Hand Sanitizer Products it sold in the United States complied with cGMPs and were not adulterated or misbranded, or did not contain undisclosed benzene impurities.

163.    Each Defendant owed a duty to care to Plaintiff and the Class(es) because they were the foreseeable, reasonable, and probable user of Hand Sanitizer Products and victim of each Defendant's fraudulent and deceptive activities.  Each Defendant knew, or should have known, that its Hand Sanitizer Products did not comply with cGMPs and were adulterated and misbranded, or contained undisclosed benzene impurities, and each was in the best position to uncover and remedy these shortcomings.

164.    Each Defendant failed to do this.  Each Defendant inadequately oversaw the manufacture or sale of its own Hand Sanitizer Products.  Each Defendant knew that ignoring the manufacturing issues surrounding its Hand Sanitizer Products would damage Plaintiff and the Class(es) and increase its own profits.

165.    Each Defendant maintained or should have maintained a special relationship with Plaintiff and the Class(es), as they were obligated to ensure that its Hand Sanitizer Products complied with cGMPs and was not adulterated or misbranded, or did not contain undisclosed benzene impurities.

166.    Each Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and the Class(es).  Each Defendant's misconduct included, but was not limited to, failing to oversee actions taken in the manufacture or sale of its Hand Sanitizer Products.

167.    Each Defendant breached duties owed to Plaintiff and the Class(es) by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and the Class(es).

168.    As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the Class(es) has suffered injury and are entitled to damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
### NEGLIGENCE PER SE

169.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

170.    This cause of action is alleged on behalf of all class members against all Defendants.

171.    Each Defendant owed a duty to Plaintiff and the Class(es) to use and exercise reasonable and due care in the manufacturing of its Hand Sanitizer Products.

172.    Each Defendant owed a duty to Plaintiff and the Class(es) to ensure that the Hand Sanitizer Products it sold in the United States complied with cGMPs and were not adulterated or misbranded, or did not contain undisclosed benzene impurities.

173.    Each Defendant owed a duty to Plaintiff and the Class(es) because each state, territory, and possession has adopted /or adheres to federal cGMP and adulteration standards.

174.    Each Defendant failed to comply with federal cGMPs and federal adulteration standards.

175.    As a result of each Defendant's failures to do so, each Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and the Class(es).

176.    As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and the Class(es) have suffered injury and are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for the following judgment:

A.      An order certifying this action as a class action;

B.      An order appointing Plaintiff as Class(es) Representative, and appointing undersigned counsel as Class(es) Counsel to represent the Class(es);

C.      A declaration that Defendants are liable pursuant to each and every one of the above-enumerated causes of action;

D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendants described herein;

E.      Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid or reimbursed for Hand Sanitizer Products; the costs to replace or return Hand Sanitizer Products; Defendants' ill-gotten gains; and/or the increases in the amounts paid for non-adulterated, non-misbranded, Hand Sanitizer Products;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      An award of statutory penalties to the extent available;

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated: March 24, 2021                                Respectfully Submitted,

/s/ Ruben Honik_____                      /s/ Daniel Nigh_____
Ruben Honik (*pro hac vice* pending)                Daniel Nigh
David J. Stanoch (*pro hac vice* pending)           LEVIN, PAPANTONIO, THOMAS, MITCHELL
HONIK LAW LLC                                         RAFFERTY & PROCTOR, P.A.
1021 Kitchens Lane                                  316 South Baylen Street
Philadelphia, PA 19119                              Pensacola, FL 32502
(215) 237-9166                                      (850) 435-7013
ruben@honiklaw.com                                  dnigh@levinlaw.com
david@honiklaw.com


/s/ Conlee S. Whiteley_____               /s/ George T. Williamson_____
Conlee S. Whiteley (*pro hac vice* pending)         George T. Williamson
Layne Hilton (*pro hac vice* pending)               FARR, FARR, EMERICH
KANNER & WHITELEY, LLC                                HACKETT, CARR & HOLMES, P.A.
701 Camp Street                                     99 Nesbit Street
New Orleans, LA 70130                               Punta Gorda, FL 33950
 (504)-524-5777                                     (941) 639-1158
c.whiteley@kanner-law.com                           gwilliamson@farr.com