ZELDA BRODOWICZ, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

VIRGIN SCENT, INC. D/B/A
ARTNATURALS, INC., WALMART, INC.,

      Defendants.
_____/


**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 3

III.  STANDARD OF REVIEW ..................................................................................... 6

IV.   ARGUMENT.......................................................................................................... 6

    A.       Plaintiff Has Standing Under Article III ............................................... 6

          i.    Plaintiff is Permitted to Assert Claims on Behalf of Absent Putative Class Members .............................................................................................. 7

          ii.   Plaintiff May Represent Absent Class Members from Other States Where a "False Conflict" of Law Exists ...................................................... 9

    B.       Plaintiff's Claims Are Not Preempted ................................................ 10

    C.       The Primary Jurisdiction Doctrine Is Not Applicable ......................... 13

    D.       Plaintiff Cognizably Pleads Warranty Claims ...................................... 14

          i.    Plaintiff Cognizably Pleads Warranty Claims Against Artnaturals............... 14

              1.  Allegations Against Artnaturals.................................................. 15

              2.  The Existence of Privity is a Fact Question................................. 15

          ii.   Plaintiff Cognizably Pleads Warranty Claims Against Walmart................... 17

              1.  Allegations against Walmart..................................................... 17

              2.  The Existence of a Warranty is a Fact Question....................... 18

          iii.  Plaintiff Cognizably Pleads the Magnuson-Moss Claim ............... 18

          iv.  Notice Issue.......................................................................... 19

    E.       Plaintiff Cognizably Plead Negligence Per Se Claims ......................... 20

V.    CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

*Aprigliano v. Am. Honda Motor Co., Inc.*,
 979 F. Supp. 2d 1331 (S.D. Fla. 2013) .............................................................. 17

*Armstrong v. Martin Marietta Corp.*,
 138 F.3d 1374 (11th Cir. 1998) ......................................................................... 8

*Burns v. Winnebago Industries, Inc.*,
 No. 11-cv-354, 2012 WL 171088 (M.D. Fla. Jan.20, 2012) ............................. 18

*Chaparro v. Carnival Corp.*,
 693 F.3d 1333 (11th Cir. 2012) ......................................................................... 6

*Colo. River Water Conservation Dist. v. United States*,
 424 U.S. 800 (1976).......................................................................................... 13

*Cruz v. Mylan, Inc.*,
 2010 WL 598688 (M.D. Fla. Feb. 17, 2010) ..................................................... 16

*DDAVP Indirect Purchaser Antitrust Litigation*,
 903 F. Supp. 2d 198 (S.D.N.Y. 2012)................................................................. 8

*Drummond Coal Sales Inc. v. Kinder Morgan Operating LP "C"*,
 836 F. App'x 857 (11th Cir. 2021)...................................................................... 6

*Dye v. Bodacious Food Co.*,
 No. 14-80627, 2014 WL 12469954 (S.D. Fla. Sept. 9, 2014) ........................... 19

*Fallik v. Nationwide Mut. Ins. Co.*,
 162 F.3d 410 (6th Cir. 1998) ............................................................................. 9

*Fox v. Ritz-Carlton Hotel Co.*, L.L.C.,
 977 F.3d 1039 (11th Cir. 2020). ........................................................................ 7

*Greenfield v. Yucatan Foods, L.P.*,
 18 F. Supp. 3d 1371 (S.D. Fla. 2014) ................................................................ 14

*Gubaala v. CVS Pharmacy, Inc.*,
 No. 14-c-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ........................... 13

*Hoving v. Transnation Title Ins. Co.*,
    545 F. Supp. 2d 662 (E.D. Mich. 2008) ............................................................................ 9

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ............................................................................................... 9

*In re Checking Account Overdraft Litig.*,
    No 1:09-MD-02036, 2016 WL 5848730 (S.D. Fla. July 5 2016) ...................................... 8

*In re Opana ER Antritrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ............................................................................... 9

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    MDL No. 2875, 2020 WL 7418006 (D.N.J. Dec. 18, 2020) ................................. 11, 13, 14

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    MDL No. 2875, 2021 WL 222776 (D.N.J. Jan. 22, 2021) ................................................ 17

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ........................................................................................ 8

*Lady Di Fishing Team, L.L.C., v. Brunswick Corp.*,
    Case No. 3:07–cv–402, 2007 WL 3202715 (M.D. Fla. Oct. 29, 2007) .............................. 16

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018) ............................................................................................... 9

*MacMorris v. Wyeth, Inc., Case No. 2:04–cv–596,*
    2005 WL 1528626 (M.D. Fla. June 27, 2005) .................................................................. 16

*Martin v. Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011) ............................................................................... 19

*McKane Family Ltd. P'ship v. Sacajawea Family Ltd. P'ship*,
    211 So.3d 117 (Fla. App. 2017) ....................................................................................... 19

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ......................................................................................................... 12

*Mink v. Smith & Nephew, Inc.*,
    860 F.3d 1319 (11th Cir. 2017) ........................................................................................ 12

*Mitchell v. VLI Corp.*,
    768 F. Supp. 966 (M.D.Fla.1992) ..................................................................................... 15

*Pecanha v. The Hain Celestial Grp., Inc.*,
    2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ......................................................... 9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................................................................... 10

*Powell v. Subaru of Am., Inc.*,
    502 F. Sup.. 3d 856 (D.N.J. 2020) ...................................................................... 19

*Prado–Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ............................................................................ 7

*Quiller v. Barclays Am./Credit, Inc.*,
    727 F.2d 1067 (11th Cir. 1984) ............................................................................ 6

*Raritan Baykeeper v. NL Indus., Inc.*,
    660 F.3d 686 (3d Cir. 2011) .............................................................................. 13

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) .......................................................................... 10

*Siqueiros v. Gen'l Motors, LLC*,
    No. 16-cv-07244, 2021 WL 2115400 (N.D. Cal. May 25, 2021)......................... 19

*Slowinksi v. Forces of Nature, Inc.*,
    No. 20-cv-2381, 2021 WL 1165099 (N.D. Ill. Mar. 26, 2021) ............................ 12

*Snyder v. Green Roads of Fla. LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) .............................................................. 14

*Wyeth v. Levine*,
    555 U.S. 555 (2009)............................................................................................ 12

*Yvon v. Baja Marine Corp.*,
    495 F. Supp. 2d 1179 (N.D. Fla. 2007).............................................................. 16

Plaintiff Zelda Brodowicz, on behalf of herself and all others similarly situated, respectfully files this Memorandum of Law in Opposition ("Opposition") to the Motion to Dismiss ("MTD") filed by the Defendants (ECF 14).

## I. INTRODUCTION

This class action involves the sale of hand sanitizers during (and possibly before) the COVID-19 pandemic that included undisclosed, dangerous genotoxic carcinogenic impurities such as benzene and other ethanol-related substances. Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals") manufactures and distributes various hand sanitizer products. Defendant Walmart, Inc. ("Walmart") purchases those products and resells them to consumers.

Hand sanitizer products are considered over-the-counter ("OTC") drugs regulated by the United States Food and Drug Administration ("FDA"). Prior to 2020, the FDA disallowed any benzene in hand sanitizer products. Due to the COVID-19 crisis, to ensure adequate supply of hand sanitizers for the American public during the pandemic, the FDA issued interim guidance that permitted very tiny traces of benzene in hand sanitizer products. Defendants capitalized on this to sell their Hand Sanitizer Products to consumers during the height of the COVID-19 pandemic as a safe product. Plaintiff Zelda Brodowicz and other putative class members are consumers who purchased Defendants' hand sanitizer products.

Subsequently, an independent pharmacy tested Defendants' products and found benzene levels far in excess of the FDA's interim limit. Neither prior to the interim guidance nor afterwards did Defendants ever disclose that their Hand Sanitizer Products contained benzene or any other ethanol-related impurity, let alone at levels above the FDA's interim limit.

The presence of undisclosed, dangerous impurities in Defendants' hand sanitizer products rendered them adulterated, misbranded, non-merchantable, and essentially worthless. Indeed,

because Defendants' products were not the 'same' as represented on the products' FDA-approved labeling – inasmuch as the products contained impurities that were undisclosed and never approved by the FDA – these dangerous Hand Sanitizer Products should not and could not have been sold in the United States in the first place. The benzene contamination created an inherently dangerous product which, along with manufacturing and quality control failures, among other things, rendered Defendants' products adulterated, misbranded, and economically worthless. This constitutes actionable, wrongful conduct under state laws.

Defendants do not meaningfully dispute these well-pleaded allegations. They do not even challenge each state law claim on the elements. Instead, they only raise four arguments: preemption, primary jurisdiction, standing, and pleadings issues with the warranty and negligence per se claims (and nothing with respect to the other five claims – fraud, negligent misrepresentation, negligence, unjust enrichment, and consumer protection statutes). None of Defendants' arguments merits dismissal.

Plaintiff's claims are not preempted by federal law. Express and implied preemption do not apply here. Defendants had identical obligations under federal and state law to ensure that their Hand Sanitizer Products were the 'same' as the FDA-approved versions and labeling. They failed to discharge those obligations. In these circumstances, holding Defendants liable for their failures under state law does not conflict with federal law, nor do Plaintiff's theories of recovery render simultaneous compliance impossible. There also is nothing so specialized here that might require this Court to abstain and refer this matter to the FDA.

Plaintiff also has standing. She purchased Defendants' products by paying money for worthless, contaminated, unapproved products that contained an undisclosed carcinogenic contaminant. As Defendants' own cases concede, now is not the time to engage in a choice-of-

law analysis, which is a fact-driven inquiry, to determine whether Plaintiff may represent other class members from states whose laws are not in conflict with those of Plaintiff's home state of Florida. Third, Defendants' privity arguments miss the mark. Plaintiff is in direct privity with Walmart as she purchased the product from them, and Florida courts long ago discarded the notion that a purchaser must be in direct privity with a manufacturer to assert a warranty claim in the circumstances present here. As to pre-suit notice, if even required, the Complaint adequately informs Defendants of the nature of the claims and issues. Finally, Defendants' terse challenge to the negligence per se claim fails because the Complaint does specify the regulations or standard Defendants breached.

For these reasons, discussed more fully below, Defendants' motion to dismiss should be denied in its entirety.

## II.    BACKGROUND

Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals") manufactures and distributes, among other things, hand sanitizer products. Compl. ¶ 8. Virgin Scent's hand sanitizer brands include Lavender & Herbs, TrueWash, Huangjisoo, The Crème Shop, Star Wars Mandalorian, Body Prescriptions, Born Basic, Beauty Concepts, PureLogic, Miami Carry On, Natural Wunderz, Puretize, Clean-Protect-Sanitize (collectively, the "Hand Sanitizer Products)." *Id.* ¶ 1. Defendant Walmart, Inc. ("Walmart") is a retailer that sold Arnaturals' Hand Sanitizer Products. *Id.* ¶ 9.

Hand sanitizers are considered over-the-counter ("OTC") drugs. Compl. ¶ 3. As such, the United States Food and Drug Administration ("FDA") regulates the sale of hand sanitizers. Compl. ¶¶ 3, 14-17. The products must meet prescribed standards, comport to FDA-approved

labeling, and are subject to current Good Manufacturing Practices ("cGMP") and state analogues governing quality and related procedures for manufacturing and sale.  *Id.* ¶ 17.

OTC products that are not of the represented quality, safety, purity, and identity are adulterated or misbranded under federal law and analogous state laws.  Compl. ¶¶ 18-24.  This includes, for example, incorrectly advertising the drug, incorrectly labeling the drug, selling a product that is the 'same' as the product's approved specifications (including, e.g., active and inactive ingredients).  Compl. ¶¶ 21, 25-29.  Labeling that omits or misstates ingredients and likewise renders the drug misbranded or adulterated.  *Id.* ¶ 44.

Benzene is a hazardous genotoxic class I human carcinogen. Compl. ¶ 2.  It is typically used in the manufacture of gasoline and other industrial chemicals or textiles.  *Id.* ¶ 4.  Due to its dangerousness, the U.S. Environmental Protection Agency mandated lower benzene content in gasoline in 2011.  *Id.*

Prior to 2020, the FDA disallowed any benzene or similar ethanol-based impurities in hand sanitizers because of the public health risk.  Compl. ¶ 31.  However, the unprecedented COVID-19 pandemic created acute demand for hand sanitizers and other hygiene products.  *See, e.g.*, Compl. ¶ 4.  Because of the grave public health concern posed by COVID-19, and to ensure an adequate supply of hand sanitizer products for the American public, the FDA issued temporary interim guidance that allowed hand sanitizers to be sold even if they included certain amounts of benzene or other ethanol-related impurities.  *Id.* ¶¶ 31-39.  Notably, the FDA's interim limits did "not apply to hand sanitizer gel or foam products because different or additional ingredients may impact the quality and potency of the product."  *Id.* ¶ 40.  The FDA also stressed that any firm wishing to use ethanol-related substances in hand sanitizer products "should test the ethanol (or have a third party laboratory conduct testing) to identify the levels of impurities listed in the

USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment." *Id.* ¶ 41.

Defendants sought to meet that demand by selling the Hand Sanitizer Products. At all times, Artnaturals and Walmart each represented and warranted that the Hand Sanitizer Products complied with FDA regulations and labeling, and that the products were what they were disclosed to be, including the disclosure of ingredients, quality, purity, and identity. *See, e.g.*, Compl. ¶¶ 6-7, 60, 65. None of Defendants' product labeling for the Hand Sanitizer Products, neither before the FDA's interim guidance nor after, ever disclosed the presence of *any* benzene in the products. *Id.* ¶¶ 44-48.

On March 24, 2021, Valisure, an independent pharmacy submitted a Citizen Petition to the FDA concerning its testing of various hand sanitizers, including Defendants' Hand Sanitizer Products. *Id.* ¶ 49. Valisure's testing revealed benzene (undisclosed by Defendants) present at levels in Defendants' Hand Sanitizer Products ranging from 2.2ppm to 16.1ppm – all of which were over the FDA's interim limit of 2ppm (assuming this exception applied to Defendants' products, insofar as those products were gels or foams for which *no* interim limit was set and *no* benzene was permitted temporarily). *Id.* ¶ 54. Each Defendant knew or should have known that their Hand Sanitizer Products contained unacceptable levels of dangerous benzene or other ethanol-related impurities, *id.* ¶¶ 107, 124, 163, especially because FDA explicitly cautioned firms to test their products for these genotoxic substances, *id.* ¶ 41.

Plaintiff Zelda Brodowicz and putative class members are purchasers of one of more hand sanitizer products. Compl. ¶¶ 1, 5-7. Plaintiff commenced this action on March 24, 2021 on the heels of Valisure's Citizen Petition, seeking economic and related damages under various state law theories because Plaintiff and each putative class member purchased an adulterated,

misbranded, and dangerous product that was essentially worthless due to Defendants' non-disclosures and other wrongful conduct. *See, e.g., id.* ¶¶ 6, 79, 85, 90-176, & Wherefore Clause.

## III.   STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "To survive a motion to dismiss," a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Drummond Coal Sales Inc. v. Kinder Morgan Operating LP "C"*, 836 F. App'x 857, 860 (11th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When a defendant raises a "demanding" affirmative defense like preemption, *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1678 (2019), "a complaint may be dismissed" only "when its own allegations indicate the existence of an affirmative defense," *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

## IV.   ARGUMENT

### A.   Plaintiff Has Standing Under Article III

It is settled law in the Eleventh Circuit that "[e]conomic harm and physical injury are well-established injuries-in-fact under federal standing jurisprudence." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014). Here, Plaintiff has established that she purchased Defendants' hand sanitizer product, which contained benzene, a known human carcinogen. Compl. ¶¶ 4, 7. The benzene contamination rendered the products worthless, *id.* ¶ 5, and Plaintiff and members of the class would not have purchased the hand sanitizer products had they known the true contents of the product, *id.* ¶¶ 7, 75, 124, 130, 131, 156.

The Eleventh Circuit Court of Appeals agrees that this **exact** type of injury is cognizable. *Debernardis v. IQ Formulations, Incorporated* 942 F.3d at 1084-85 (11th Cir. 2019). In *Debernardis*, the Eleventh Circuit discussed the "benefit-of-the-bargain" theory of economic damages and wrote the following: "Beginning with the first question, we accept, at least at the motion to dismiss stage, that a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value….Given Congress's judgment, we conclude that the purchaser of such a supplement received a defective product that had no value. This conclusion is consistent with the well-established benefit-of-the-bargain theory of contract damages, which recognizes that some defects so fundamentally affect the intended use of a product as to render it valueless." *Debernardis*, 942 F.3d at 1084-85.

      i.       <u>**Plaintiff is Permitted to Assert Claims on Behalf of Absent Putative Class Members**</u>

Unable to refute that Plaintiff Brodowicz has a cognizable injury-in-fact to demonstrate Article III standing, Defendants argue that Plaintiff Brodowicz lacks standing to assert state-law claims on behalf of putative absent class members from other states. However, in so arguing, the Defendants essentially "mix up the class representative standing inquiry…[by] conflat[ing] the requirements of individual standing with those for a class representative." *Fox v. Ritz-Carlton Hotel Co.*, L.L.C., 977 F.3d 1039, 1047 (11th Cir. 2020). Standing looks at injury in *fact*, not substantive law.

Rather, as the Eleventh Circuit has established, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). "Thus, it is well-settled that ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman*, 221 F.3d at 1279. A multi-state class

action need not have a class representative from every possible state so long as the interests of class members from each state are aligned. Indeed, the procedural question of what claims a given injury empowers a class representative to bring on behalf of unnamed class members is one that is decided at "class certification[.]" *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998)

Moreover, district courts in the Eleventh Circuit routinely allow named plaintiffs to represent out-of-state class members where the suit relates to common law causes of action. *See In re Checking Account Overdraft Litig.*, No 1:09-MD-02036, 2016 WL 5848730, at *3-4 (S.D. Fla. July 5 2016) (citing cases). As the *Overdraft* court explained:

> Where a named plaintiff has established individual standing to bring specific claims against a defendant in his or her own right, but asserts parallel common law claims arising under different states' laws on behalf of a putative class, the plaintiff is not "attempting to piggy-back on the injuries of the unnamed class members."

*Id.* (quoting *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06-md-1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006)). Thus, standing at this stage is not a state-by-state, defendant-by-defendant, claim-by-claim analysis, as Defendants contend. Rather, the issue is whether the named plaintiff's injuries "are sufficiently similar to those of the purported class to justify the prosecution of a nationwide class action." *Id.* (citing *DDAVP Indirect Purchaser Antitrust Litigation*, 903 F. Supp. 2d 198, 214 (S.D.N.Y. 2012)). The Eleventh Circuit agrees: "if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004).[1]

---

[1] Defendants' own case-law support this proposition. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others"); *Martinez v. Wells Fargo Bank*, N.A., 307 F.R.D. 630, 639 (S.D. Fla. 2015) ("The absent class members . . . are not before this Court until

Other circuits agree there is no Article III problem with a class representative seeking to pursue claims on behalf of class members from other states. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("[T]he claims of the named plaintiffs" need not "in all respects be identical to the claims of each class member."); *Fallik v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 421 (6th Cir. 1998) ("Requiring that the claims of the class representative be in all respects identical to those of each class member in order to establish standing would 'confuse[] the requirements of Article III and Rule 23"); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 96 (2d Cir. 2018) ("whether a plaintiff can bring a class action under the state laws of multiple states, is a question of predominance under Rule 23(b)(3), not a question of standing under Article III."); *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) ("Whether the named plaintiffs "may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions."). As discussed *infra* Part IV.A.ii, whether a false conflict exists as to Plaintiff's home state and the laws of other class members' states is to be decided at class certification, not now on a Rule 12(b)(6) motion. *See, e.g.*, *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) (upholding standing of eight represented states to bring claims on behalf of remaining states); *Pecanha v. The Hain Celestial Grp., Inc.*, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018) (denying motion to dismiss and finding that standing to bring claims arising in other states could be deferred until certification).

ii.       **Plaintiff May Represent Absent Class Members from Other States Where a "False Conflict" of Law Exists**

---

the point of certification.").

Plaintiff may assert that she can represent all persons from Florida, as well as persons in states whose laws do not conflict with the laws in the state of Florida. This is consistent with *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). In *Shutts*, the Supreme Court held that a class representative of one state may represent absent class members in different states provided there is a "false conflict" of law. *Id.* at 816 ("There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."). The *Shutts* court remanded the matter for the lower courts to conduct a choice-of-law analysis.

Plaintiff asserts claims based on broadly similar state law premised on the same course of conduct by the Defendants. It is not jurisdictionally fatal at the Rule 12(b)(6) stage that Plaintiff does not have a class representative from each state. Plaintiff does not attempt to suggest to the Court that this inquiry should be delayed in perpetuity. There is, indeed, a clear time in which courts routinely conduct an analysis of whether a "false conflict" exists – at the class certification stage. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) ( "[t]he party seeking certification ... must ... provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles."). At class certification, Plaintiff will provide more detail at class certification to demonstrate typicality and other prongs, which Defendants are welcome to dispute. The Court will be able to decide these choice-of-law questions at that appropriate time, when the Parties have briefed the choice-of-law issues.[2]

## B.      Plaintiff's Claims Are Not Preempted

### i.      Plaintiff's Claims Are Not Impliedly Preempted

---

[2] Arguably, Defendants' failure to acknowledge the choice-of-law issue constitutes a waiver. *Williams v. BASF Catalysts LLC* 765 F.3d 306, 316 (3d Cir. 2014) ("All U.S. Courts of Appeals to have addressed the issue have held that choice-of-law issues may be waived.").

As an initial matter, Defendants raise the same implied preemption arguments here that Walmart and others unsuccessfully raised in another pending litigation involving contaminated generic drugs. That court soundly rejected Walmart's preemption argument. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2020 WL 7418006, *7-9 (D.N.J. Dec. 18, 2020). This Court should do the same because both bases Defendants cite for implied preemption – "fraud-on-the-FDA" and private enforcement of the FDCA – do not exist here.

***First***, Plaintiff does not allege fraud on the FDA. The Complaint pleads concealment from consumers. Compl. ¶ 73 ("no defendant revealed to the **public**"); ¶ 124 ("fraudulently inducing **customers** to pay"); ¶ 124 ("Defendants' Hand Sanitizer Products were illegally manufactured, illegally distributed, and illegally sold to **Plaintiff and class members** based on Defendants' fraudulent misrepresentations and omissions"). For this reason alone, implied preemption under *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) is inapplicable.

***Second***, as the Supreme Court has made clear, implied preemption only applies if a plaintiff "solely" seeks to enforce the FDCA directly, and i f t h e c l a i m o r d u t y does not flow from a pre-existing state-law duty. *Buckman*, 531 U.S. at 353. By contrast, when a state law claim relies on "traditional state tort law," the claim is not preempted. *Id*. at 353.

Plaintiff does not seek to enforce the FDCA. The Complaint explicitly seeks to enforce analogous or parallel state laws or duties. Compl. ¶ 30. Each of Plaintiff's claims relies on an independent state law basis that Defendants could have satisfied, but did not. Compl. ¶ 92-95; 97-100; 106-111. That both federal and state law might prohibit the sale of Hand Sanitizer Products contaminated with benzene simply means those state requirements parallel federal requirements. *See, e.g.*, *In re Valsartan*, 2020 WL 7418006, at *8-9 (parallel state duty not to sell contaminated

drug were not impliedly preempted); *see also Wyeth v. Levine*, 555 U.S. 555, 564 (2009) (FDCA did not impliedly preempt state law claims seeking to enforce parallel state law requirements).

## ii.  Plaintiff's Claims Are Not Expressly Preempted

Defendants' express preemption argument (MTD at 11-12) largely mirrors its implied preemption. To wit, Defendants argue that 21 U.S.C. § 379r preempts state laws or claims that seek to impose any "requirement…that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA]."  This provision is nothing more than a restatement of implied preemption principles.

Contrary to Defendants' straw-man arguments and facts that are not alleged in the Complaint (*see* MTD at 12), Plaintiff does not seek to impose any requirement on Defendants that is non-parallel to federal requirements.  Rather, Plaintiff argues that Defendants failed to live up to the already-established federal requirements, which in turn are adopted or mirrored by state laws.   As the Supreme Court and Eleventh Circuit have repeatedly held, showing that a defendant's breach of state-law duties would also show "that [the defendant] violated FDA regulations" does not establish preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996)*; see Godelia v. Doe 1*, 881 F.3d 1309, 1319 (11th Cir. 2018) (plaintiffs need not "invoke magic words in their complaints" for claims to be parallel).   Stated otherwise, the question becomes: does "[the plaintiff] allege that [defendant's] violation of a federal requirement also caused the violation of a state-law duty"?  If the answer is "yes," then the claim is preempted under § 379r.  If the answer is "no," then it is not. *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017).  The answer here is "no." *See Slowinksi v. Forces of Nature, Inc.*, No. 20-cv-2381, 2021 WL 1165099, at *3 (N.D. Ill. Mar. 26, 2021) (rejecting § 379r preemption as to OTC drug as federal law "prohibits misbranding of drugs, which occurs if the drug's label is

false or misleading in any particular . . . Plaintiff's state-law claims would also require Defendant to refrain from falsely or misleadingly label their products. . .[g]ranting Plaintiff relief would . . . not impose a state requirement different from or in addition to, or that is otherwise not identical with" any federal law) (internal quotations omitted).

C.    **The Primary Jurisdiction Doctrine Is Not Applicable**

If Defendants' primary jurisdiction doctrine argument were correct, no pharmaceutical or medical device case would ever proceed in federal court, which certainly is not the case. *See, e.g.*, *Gubaala v. CVS Pharmacy, Inc.*, No. 14-c-9039, 2016 WL 1019794, at *16 (N.D. Ill. Mar. 15, 2016) (refusing to dismiss or stay claims against CVS under primary jurisdiction where CVS was alleged to have sold mislabeled protein powder supplements). Indeed, Defendant Walmart raised this exact argument in a pending MDL, where its primary jurisdiction argument was soundly rejected. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2020 WL 7418006, at *11-24 (D.N.J. Dec. 18, 2020) (rejecting primary jurisdiction argument in litigation involving contaminated generic drugs).

As many courts recognize, "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Accordingly, the primary jurisdiction doctrine is reserved for a "limited set of circumstances" that "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015), factors not present here.

The cases cited by Defendants are distinguishable. In the first case, the FDA was actively engaged in issuing regulations on the amounts of cannabidiol (CBD). *Snyder v. Green Roads of*

*Fla. LLC*, 430 F. Supp. 3d 1297, 1306 (S.D. Fla. 2020). In the second, the FDA was in the process of defining "evaporated cane sugar" for food labeling. *Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371 (S.D. Fla. 2014). No issue of first impression exists here – the FDA already determined the limits on benzene and other impurities in hand sanitizers, and Defendants failed to abide by those minimum standards, as paralleled by state law. Simply put, there is nothing novel or unique about federal courts' potentially having to refer to already established FDA regulations or guidance, as is the case here and many other similar cases involving contaminated products subject to federal and parallel state standards. *See, e.g.*, *In re Valsartan*, 2020 WL 7418006, at *11-24.

### D. Plaintiff Cognizably Pleads Warranty Claims

Defendants argue that the Complaint does not allege sufficient facts to plead adequately the warranty claims. To the contrary, the Complaint validly states causes of action for breach of express and implied warranties pursuant to the numerous state laws pleaded, as well as violations of the Magnuson-Moss Warranty Act.[3] Defendants' arguments really do nothing but inject factual controversies outside the scope of the Complaint, and pleas for the Court to make factual determinations in Defendants' favor. Neither of these is appropriate at the Rule 12(b)(6) stage.

### i. Plaintiff Cognizably Pleads Warranty Claims Against Artnaturals

Artnaturals argues that, as the manufacturer of Hand Sanitize Products, Plaintiff is not in direct privity with it. This argument is without merit, and asks the Court to engage in an

---

[3] Because the viability of the Magnuson-Moss claims depends on applicable state law, and because the state warranty claims are viable for the reasons discussed in this section, so too, are the Magnuson-Moss claims.

inappropriate factual determination more applicable for a Motion for Summary Judgment and not a Motion for dismissal under Rule 12.

### 1. **Allegations Against Artnaturals**

As detailed in the Complaint, Artnaturals represented and warranted to Plaintiff that its Hand Sanitizer Products were of merchantable quality and complied with federal and analogous state laws. *See, e.g.*, Compl. ¶¶ 6-7, 60, 93-94. Artnaturals also represented that its Hand Sanitizer Products did not contain undisclosed impurities such as benzene. *Id.* It further warranted its products were merchantable and fit for their ordinary use as an FDA-approved OTC drug. *Id.* ¶ 93. More specifically, Plaintiff alleges that Artnaturals represented its Hand Sanitizer Products were compliant with cGMP and not adulterated, misbranded or did not otherwise contain undisclosed levels of Class I human carcinogens, such as benzene. *Id.* ¶¶ 94-95-98, 107-108. Plaintiffs also allege that Artnaturals breached its express and implied warranties because the Hand Sanitizer products were not merchantable, were not fit for their ordinary purpose, and did not comply with cGMPs. *Id.* These allegations adequately plead express and implied warranty claims. They identify the warranty, to whom it was made, and how it was breached. Nothing more is required.

### 2. **The Existence of Privity is a Fact Question**

As a threshold matter, the existence of a warranty (and the corollary determination of whether privity exists as to that express warranty) is a question not usually decided on a motion to dismiss. *Mitchell v. VLI Corp.,* 768 F. Supp. 966, 970 (M.D.Fla.1992) (citing *Knipp v. Weinbaum,* 351 So.2d 1081 (Fla. App. 1977)).

While Florida law indicates that the parties must be in privity to recover on an express warranty claim, "[Florida courts] have held, however, that some factual circumstances satisfy the privity requirement in the absence of a purchase directly from the manufacturer." *MacMorris*

*v. Wyeth, Inc.,* Case No. 2:04–cv–596, 2005 WL 1528626, at *3 (M.D. Fla. June 27, 2005). Indeed, in the pharmaceutical context, other courts have found that because a plaintiff alleged that a defendant made specific statements about the safety of their products, these allegations were sufficient to articulate a claim for breach of express warranty in this situation because Plaintiff demonstrated that there exists some factual situation in which a court could find privity existed between the parties. This is especially true where, as here, the manufacturer's statements (e.g., OTC drug labeling) are intended for, and must accompany, the product when sold to a consumer. *See, e.g., Cruz v. Mylan, Inc.*, 2010 WL 598688, at *2 (M.D. Fla. Feb. 17, 2010); *see, also, Lady Di Fishing Team, L.L.C., v. Brunswick Corp.,* Case No. 3:07–cv–402, 2007 WL 3202715, at *6 (M.D. Fla. Oct. 29, 2007) (refusing to dismiss an express warranty claim against manufacturer because plaintiff alleged some contacts with manufacturer and alleged an agency relationship between the manufacturer and dealer of the product); *Yvon v. Baja Marine Corp.,* 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007) (existence of privity is a factual question that cannot properly be resolved on the instant motion to dismiss). It does not matter whether the warranty claim is an express warranty claim, implied warranty claim, or a claim under the Magnuson-Moss Warranty Act; courts still routinely find that the existence of privity is a factual question only to be determined after the development of a full factual record. *Id.* (finding that "privity is a factual question" under the Magnuson-Moss Warranty Act). !!

Here, Plaintiff alleges that Arnaturals communicated their express warranty directly to consumers. Indeed, Arnaturals expressly warranted directly to consumers that their Hand Sanitizer Products were free of benzene and were what the product was said to be on the package labeling. Compl. ¶¶ 14-30, 42-48. These allegations are enough to "survive a motion to dismiss." *Cruz*, 2010 WL 598688, at *2; *see Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1340

(S.D. Fla. 2013) (remote privity assumed where defendant provides warranty that runs in favor of remote purchasers of its product); *see also In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 222776, at *2 (D.N.J. Jan. 22, 2021) (denying motions to dismiss express and implied warranty claims as to manufacturer defendants where manufacturers identified drug as valsartan, an express warranty, and product was not valsartan due to contamination).

ii.     **Plaintiff Cognizably Pleads Warranty Claims Against Walmart**

What Defendant Walmart purposefully sidesteps in its argument regarding the warranty claims is that privity is most clearly established between the consumers of the Hand Sanitizer Products and the big-box retailer who sells the product (in this case, Defendant Walmart). Because privity is so clearly established, Defendant Walmart is only left to argue that the factual allegations are somehow insufficient and "shotgun" in nature.[4]

1.     **Allegations against Walmart**

Plaintiff's allegations against Walmart are anything but threadbare. The Complaint describes that Walmart warranted to consumers and others that its Hand Sanitizer Products were comprised of the materials disclosed on the products' labels. Compl. ¶¶ 6-7. Walmart represented and warranted to Plaintiff and other consumers that its Hand Sanitizer Products were of merchantable quality and complied with federal and analogous state law. *Id.* ¶ 65. The Complaint also alleges that Walmart did not disclose that its Hand Sanitizer Products contained impurities such as benzene. *Id.* Walmart also warranted that its Hand Sanitizer Products were fit for ordinary

---

[4] Defendant Walmart makes a passing reference to the "shotgun" pleading nature of the allegations but does not fully argue that the Complaint's form makes it impossible for it to be on notice of the claims against it. Indeed, Defendants have not demonstrated—or even clearly argued—that they have been deprived of notice of the claims asserted against them. To the contrary, Defendants present detailed arguments going to the merits of Plaintiffs' claims, which is only possible because Plaintiffs put Defendants on *clear* notice of those claims.

use as an FDA-approved OTC drug and were the 'same' as the FDA-approved products, when in fact they were not because they contained undisclosed carcinogens. *Id.* ¶¶ 93-95. Plaintiff also alleges that Defendant Walmart sold Hand Sanitizer Products that were compliant with cGMP and not adulterated, misbranded or did not otherwise contain undisclosed levels of Class I human carcinogens, such as benzene. *Id.* ¶ 94. The Complaint also alleges that Defendant Walmart never disclosed that the product contained benzene at levels above the FDA's interim limit. *Id.* ¶ 68. The Complaint explains how Walmart's express and implied representations about the quality, identity, safety, merchantability, and fitness of its Hand Sanitizer Products were false and misleading. *Id.* ¶¶ 68, 97. These allegations are more than sufficient to put Walmart on notice of the warranty claims against it. *See* Fed. R. Civ. P. 8(a).

## 2. <u>The Existence of a Warranty is a Fact Question</u>

Defendant Walmart's factual attacks of these allegations, arguing that they somehow fail to state a claim are inappropriate for Rule 12(b)(6). As discussed *supra*, the existence of the warranty is a question not usually decided on motion. *Mitchell,* 768 F. Supp. at 970 (citing *Knipp,* 351 So.2d 1081). While Defendant Walmart argues that "a non-manufacturer retailer of a pre-packaged product cannot be held liable for breach of warranty claims," these are facts outside of the complaint and not suited for resolution now.

### iii. <u>Plaintiff Cognizably Pleads the Magnuson-Moss Claim</u>

Defendants concede that Plaintiff's Magnuson-Moss Claims ("MMWA") are to be assessed in the similar manner as their warranty claims. This is supported by the law of this circuit. A MMWA claim depends on a state law claim for breach of warranty. *See, e.g., Burns v. Winnebago Industries, Inc.,* No. 11-cv-354, 2012 WL 171088, at *4 (M.D. Fla. Jan.20, 2012) (collecting cases). If the Court finds that any of Plaintiff's warranty claims may continue, the

MMWA claim must also be permitted to continue. *Dye v. Bodacious Food Co.*, No. 14-80627, 2014 WL 12469954, at *6 (S.D. Fla. Sept. 9, 2014).

iv.    **Notice Issue**

As an initial matter, Plaintiff did not need to provide notice to Artnaturals because it is a manufacturer, not a seller. *See Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09-cv-607, 2010 WL 1223126, at *5 (M.D. Fla. Mar. 25, 2010) (notice provision "does not require notice to a manufacturer").

Regardless, while Defendants contend that the Complaint does not expressly allege pre-suit notice for the warranty claims (MTD at 17), they do not allege any prejudice or inability to understand Plaintiff's claims. To the contrary, in response to the Complaint, Defendants sought and received additional time to respond to the Complaint, including the warranty claims, and submitted an agreed-upon scheduling report and proposed scheduling order to the Court. Many courts hold that the filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim. *See, e.g.*, *Siqueiros v. Gen'l Motors, LLC*, No. 16-cv-07244, 2021 WL 2115400, at *13 (N.D. Cal. May 25, 2021); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (amended complaint adequately alleged defendant had notice of issue). Courts also hold that a pre-suit notice requirement is inapplicable where a defendant is aware of the issue, *see, e.g.*, *Powell v. Subaru of Am., Inc.*, 502 F. Sup.. 3d 856, 877-888 (D.N.J. 2020), and Defendants are alleged to have known of the issue here; a minimum, the publicly available citizen petition submitted by Valisure and the ensuing media coverage put Defendants on notice. Compl. ¶¶ 49-54, 107, 124-126, 139, 151, 163-165. In any event, failure to allege pre-suit demand notice is not fatal and "demand may be made post-suit and alleged in an amended complaint." *McKane Family Ltd. P'ship v. Sacajawea Family Ltd. P'ship*, 211 So.3d 117, 121 (Fla. App. 2017).

### E. **Plaintiff Cognizably Plead Negligence Per Se Claims**

Defendants tersely challenge Plaintiff's negligence per se claim on the basis that that Plaintiff "failed to identify a specific regulation or standard that was violated." MTD at 20. The Complaint's allegations belie this. The Complaint makes explicit reference to the regulations that Defendants violated. These include the regulations regarding the identification of each active and inactive ingredient (Compl. ¶ 15), the standards that the Hand Sanitizer Products must meet with respect to safety and efficacy (*id.* ¶¶ 16-17), and the regulations regarding the sale of misbranded or adulterated products (*id.* ¶¶ 18-24).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: July 26, 2021                    Respectfully submitted,


*/s/ George T. Williamson*
GEORGE T. WILLIAMSON
FARR, FARR, EMERICH, HACKETT
 & CARR, P.A.
99 Nesbit Street
Punta Gorda, FL 33950
941-639-1158
gwilliamson@farr.com


Daniel Nigh
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 RAFFERTY & PROCTOR, P.A.
316 South Baylen Street
Pensacola, FL 32502
(850) 435-7013
dnigh@levinlaw.com

Ruben Honik (*pro hac vice* pending)
David J. Stanoch (*pro hac vice* pending)
HONIK LAW LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102

(267) 435-1300
ruben@honiklaw.com
david@honiklaw.com

Conlee S. Whiteley (*pro hac vice* pending)
Layne Hilton (*pro hac vice* pending)
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
 (504)-524-5777
c.whiteley@kanner-law.com
l.hilton@kanner-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July, 2021, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system.

/s/ George T. Williamson
George T. Williamson