**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-60643-CIV-ALTMAN/Hunt

ZELDA BRODOWICZ, DEREK ELLIS,
and HAROLD NYANJOM, individually and
on behalf of all others similarly situated,

       Plaintiffs,

v.

VIRGIN SCENT, INC., d/b/a ARTNATURALS,
INC., and WALMART, INC.,

       Defendants.
_____/

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT**

      Plaintiffs Zelda Brodowicz, Derek Ellis, and Harold Nyanjom ("Plaintiffs"), by and through the undersigned attorneys, move for preliminary approval of their revised class action settlement with Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals"). Defendants do not oppose this motion.

**I.    INTRODUCTION**

      This is a putative class action concerns the sale of hand sanitizer products (the "Products") made and distributed by Defendant Artnaturals. It was commenced on March 24, 2021. The operative complaint, the Second Amended Complaint, alleges the Products contained undisclosed amounts of benzene. After two years of hard-fought litigation, the partis have reached a proposed class settlement. The Settlement Agreement (Ex. A hereto) provides that, in exchange for a dismissal with prejudice of this action (and a related action filed in federal court in California, which has been stayed pending the resolution of this action), and for certain release, Defendant Virgin Scent or its insurers will pay $3,088,000 into a settlement fund for a class of all persons who purchased or used the Products. Claims against both Defendants will be dismissed with prejudice pursuant to the Settlement as well, thus ending this litigation were the Court to approve it.

1

Plaintiffs submit that the Court should grant preliminary approval because the proposed settlement provides substantial relief for the settlement class, and the settlement's terms are fair, adequate, and reasonable. The parties have agreed to settle after years of contested litigation, including extensive discovery and motions practice. The settlement resulted from arm's length negotiations between experienced counsel before a neutral third-party mediator. The proposed settlement will avoid the uncertainties and delays of continued litigation.

Plaintiffs previously filed an unopposed motion for preliminary approval on April 28, 2023. *See* D.E. 82. The Court denied that motion without prejudice on May 4, 2023 because it was unclear to the Court whether Plaintiffs intended to seek incentive awards for named Plaintiffs, and that the proposed schedule of events should see any motion for attorneys' fees and costs filed sooner in the process. *See* D.E. 83. The parties' revised Settlement addresses all of this. Plaintiffs do not seek any incentive awards for named Plaintiffs, and the Settlement does not contemplate any. Further, Plaintiffs have filed contemporaneously herewith their motions for attorneys' and costs (which does not seek incentive awards), so the Court may rule on such motion prior to preliminary approval and the dissemination of class notice, so class members may know the amount of fees and costs during the claim submission, opt-out, and objection period.

For these reasons, discussed more fully below, Plaintiffs ask the Court to issue an order preliminarily approving the settlement agreement, appointing Plaintiffs as settlement class representatives, appointing the undersigned as Class Counsel, approve the class notice, approve the settlement administrator for purposes of administering notice, claims, and the settlement fund, and set a date for a final approval hearing.

## II.   BACKGROUND

### A.   Summary of Action

Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals") manufactures and distributes, among other things, hand sanitizer products (the Products). SAC ¶ 11. Defendant Walmart, Inc. ("Walmart") is a retailer that sold Arnaturals' Hand Sanitizer Products to consumers. *Id.* ¶ 12. Plaintiffs and other putative class members are persons who purchased Artaturals' Products at Walmart and other locations. *Id.* ¶¶ 1, 8-10.

Plaintiffs allege that hand sanitizers such as Artnaturals' Products are considered over-the-counter ("OTC") drugs. SAC ¶ 3. As such, the United States Food and Drug Administration ("FDA") regulates the sale of hand sanitizers. *Id.* ¶¶ 3, 17-20. Hand sanitizers must meet prescribed standards, comport to FDA-approved labeling, and are subject to current Good Manufacturing

Practices ("cGMP") and state analogues governing quality and related procedures for manufacturing and sale. *Id.* ¶ 20.

The SAC alleges that benzene is a hazardous genotoxic class I human carcinogen. *Id.* ¶ 2. Prior to 2020, Plaintiffs claim the FDA disallowed any benzene or similar ethanol-based impurities in hand sanitizers because of the public health risk. *Id.* ¶ 42. However, the COVID-19 pandemic created acute demand for hand sanitizers and other hygiene products. *See, e.g.*, *id.* ¶ 4. Because of the grave public health concern posed by COVID-19, and to ensure an adequate supply of hand sanitizer products for the American public, the FDA issued temporary interim guidance that allowed hand sanitizers to be sold even if they included certain amounts of benzene or other ethanol-related impurities. *Id.* ¶¶ 42-52. The Second Amended Complaint alleges the FDA's interim limits did "not apply to hand sanitizer gel or foam products because different or additional ingredients may impact the quality and potency of the product." *Id.* ¶ 51. The FDA also stressed that any firm wishing to use ethanol-related substances in hand sanitizer products "should test the ethanol (or have a third party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment." *Id.* ¶ 52.

On March 24, 2021, Valisure, an independent pharmacy submitted a Citizen Petition to the FDA concerning its testing of various hand sanitizers, including Defendants' Hand Sanitizer Products. *Id.* ¶ 60. Valisure's testing purportedly revealed benzene present at levels in the Products ranging from 2.2ppm to 16.1ppm. *Id.* ¶ 65. Subsequently, Artnaturals recalled the Products.

Plaintiffs' Second Amened Complaint seeks economic and other damages under various state law theories because, as alleged, each Plaintiff and putative class member purchased an adulterated, misbranded, and dangerous product that was essentially worthless due to Defendants' non-disclosures and other wrongful conduct, and which resulted in actual physical harm and increased the risk of cancer. *See, e.g., id.* ¶¶ 5-7, 81-91, 111-907, & Wherefore Clause.

**B.     Procedural Posture and Discovery Status**

The case is fairly progressed. Defendants moved to dismiss the First Amended Complaint. *See* D.E. 43. The Court directed Plaintiffs to amend to separate out claims by legal theory and Defendants, which they did. *See* D.E. 53. Defendants then moved to dismiss the Second Amended Complaint. That motion is fully briefed and remains pending. *See* D.E. 56, 57 & 61.

Meanwhile the parties engaged in extensive written discovery. Defendants propounded multiple sets of written discovery to Plaintiffs, which each of them has answered. Defendants also

sought documents from non-party Valisure, the laboratory that filed the Citizen Petition referenced in the Second Amended Complaint. Plaintiffs, in turn, propounded multiple sets of discovery seeking data and document discovery from both Defendants. Each Defendant has produced electronic sales or purchase data, as well as copies of custodial documents. Plaintiffs also filed a motion to compel each Defendant to produce additional data and documents. That motion is fully briefed and remains pending. *See* D.E. 74 & 75.

  **C.**  **Settlement Negotiations**

For the last year, the parties have worked with two different mediators over multiple live sessions, plus additional back and forth with the mediators. The parties participated in two mediations before the Hon. Leo S. Pappas, Ret., a former United States Magistrate Judge, on December 2, 2022. That mediation did not result in resolution, but did crystallize each side's case assessments and positions. The parties continued to discuss the potential for resolution. Out of those communications, the parties agreed to continue mediation effort, and selected the Hon. Wayne Anderson, Ret., former United States District Court Judge for the Northern District of Illinois. The live mediation occurred on January 25, 2023 in Naples. Florida. At the conclusion of the mediation, the parties continued their settlement discussions and, with the mediator's assistance, were able to reach an oral, global settlement in principle, which the parties reported to this Court on January 30, 2023. D.E. 80. The Court administratively closed this case pending the parties' preparation of settlement papers, setting a deadline of April 28, 2023 for the submission of this motion for preliminary approval. D.E. 81.

  **D.**  **Overview of Settlement Terms**

***Settlement Class.*** The Settlement is comprised of the following settlement class:

> All persons in the United States who, since January 1, 2015 to the present, paid any amount of money for a Hand Sanitizer Product that was sold or otherwise distributed by Artnaturals, Inc.

Ex. A at p.10. Excluded from the Class are any judges and any member of such judges' immediate families, as well as persons who timely submit appropriate opt-out requests. *Id.* at p.10, 17.

  ***Relief.*** The Settlement provides that Artnaturals will create a settlement fund of $3,088,000.00. *Id.* at p.11. From this amount, each Settlement Class Member will be entitled to receive a settlement payment (i) as compensation for purchases of the Products, and/or (ii) as compensation intended for medical monitoring for those who used the Products. *Id.* at pp.11-12. Economic compensation for purchases is equal to actual amounts paid or, absent proof of purchase,

4

$5 per attested purchase. *Id.* at p.11. Medical monitoring compensation is up to $1,000 per claimant. *Id.* at p.12. Settlement Class Members will share pro rata in the proceeds remaining in the settlement fund, up to the prescribed maximums for each category (economic compensation and medical monitoring compensation). *Id.* at 21-23. Unclaimed funds (e.g., uncashed settlement payment checks) will be delivered to a charitable organization selected by the parties. *Id.* at p.23.

***Release.*** As consideration for the monetary relief under the Settlement, Defendants will receive a class-wide release as more specifically delineated in the settlement agreement with respect to any claim that was alleged or could have been alleged in this action. *Id.* at p.5. The claims against Defendants will be dismissed with prejudice. *Id.* at p.23. In addition, parties in a related action pending but stayed in the Central District of California, *Lauren Slaughter, et al. v. Virgin Scent, Inc.*, Consolidated Case No. 2:21-CV-02875-VAP-E (C.D. Cal.), will be dismissed as well. *Id.* The *Slaughter* plaintiffs signed onto the Settlement here, but otherwise are settling their individual, non-class claims separately with Artnaturals. *Id.* at p.27.

***Notice and Settlement Administration.*** The Settlement provides that notice and claims administration fees will be deducted from the settlement fund. Ex. A at p.16. The parties have selected Angeion Group, a reputable notice and claims administrator, to effectuate a nationwide notice process, and the claims process. The administrator will construct and maintain a dedicated website posting all pertinent settlement and case papers, as well as providing for online claims form submissions. *Id.* a p.16. Notice will be effectuated nationwide through multiple online or traditional print media outlets designed to maximize reach to potential class members. *Id.* The long-form and short-form proposed notices are attached hereto as Exs. B & C.

***Attorneys' Fees and Costs.*** The Settlement contemplates Plaintiffs may seek an award of attorneys' fees and reasonable litigation costs up to one-third of the settlement fund after class notice and preliminary approval, which Defendants will not oppose. *Id.* at p.12. The revised Settlement does not provide for service awards to named Plaintiffs Brodowicz, Ellis, and Nyanjom. Consistent with this, Plaintiffs' contemporaneously filed motion for attorneys' fees and costs do not seek any incentive awards for any named Plaintiff.

**III.   THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002). This is due in part to "[p]ublic policy strongly favor[ing] the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,*, 967 F.2d 489, 493 (11th

Cir. 1992). Here, experienced counsel for both sides, well-versed in the strengths and weaknesses in this case based on extensive motions practice and discovery, engaged two reputable neutral mediators, the Hon Leo S. Papas, Ret. and the Hon. Wayne Anderson, Ret., to assist them reach a potential global resolution of all issues as between the parties. Ex. D (Class Counsel Decl.). This effort resulted in the settlement, and as such the settlement carries a presumption of fairness given its arm's-length negotiation. *See, e.g.*, *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) ("the court must rely on the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its judgment for that of counsel").

## IV. THE SETTLEMENT SATISFIES FEDERAL RULE CIVIL PROCEDURE 23

### A. The Rule 23(a) Criteria Are Met

Rule 23(a) lays out four threshold requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The Settlement Agreement satisfies each of these requirements.

#### 1. The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Although no magic number exists, courts in this Circuit typically find the numerosity requirement to be satisfied if there are more than 40 class members. *See, e.g.*, *Navelski v. Int'l Paper Co.*, No. 3:14-cv-445, 2017 WL 1132569, at *15 (N.D. Fla. Mar. 25, 2017) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). The settlement easily exceeds this threshold, as the parties estimate there are at least hundreds, if not thousands, of Settlement Class Members, based on Defendants' own sales and purchase data. *See* Ex. D (Counsel Decl.).

#### 2. Common Questions of Fact and Law Exist

Rule 23(a)'s commonality requirement is also satisfied here. "The threshold of commonality is not a difficult one to meet." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005). There must be at least one common issue of fact or law, and not every class member must share the same factual and legal predicate. *See, e.g.*, Navelski, 2017 WL 1132569, at *15. Here, the claims of Plaintiffs and the Class present a number of common factual and legal questions, including but not limited to:

- whether the Products contained benzene;
- whether Artnaturals' omissions are misleading, or objectively reasonably likely to deceive;
- whether the alleged conduct violates public policy;

6

- whether Artnaturals engaged in false or misleading advertising or statements;
- whether Artnaturals was unjustly enriched as a result of its labeling, marketing, advertising, and/or selling of the Products;
- whether Plaintiffs and the Class are entitled to damages and/or restitution, and the proper measure of such losses.

Simply put, this action presents many common questions of law and fact. Each of these questions is answerable through common proof, and their resolution would "affect all or a significant number of the putative class members" in a manner "apt to drive the resolution of th[is] litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Accordingly, the commonality criterion is satisfied.

### 3. Plaintiffs' Claims Are Typical

The typicality requirement aims to assure that the interests of named class representatives align with the interests of the class. To that end, "[a] class representative must possess the same interest and suffer the same injury as the class members." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004). "Yet, the '[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quotation marks omitted). Typicality therefore exists where "the claims of the class and its representatives arise from the same events, practice, or conduct and are based on the same legal theories." *Navelski*, 2017 WL 1132569, at *15.

Plaintiffs' and other Settlement Class Members' claims arise from the same facts and theories. Each Plaintiff and Settlement Class Member purchased and/or used the Products without knowledge of their potential contamination with benzene, and they all suffered financial harm and may bear monitoring costs as a result. But for Defendants' alleged conduct, Plaintiffs and the Class would not have purchased the Products. Thus, "the same unlawful conduct affected both [the Plaintiffs] and the rest of the [proposed C]lass." *Navelski*, 2017 WL 1132569, at *15

### 4. The Adequacy Requirement Is Met

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement focuses on whether the representatives have any conflicts of interest with the interests of the class, and whether class counsel is capable of representing the class. *See Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Busby v. JRHBW, Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008).

Plaintiffs' interests are coextensive with those of the Class. Plaintiffs and the Class have an equally great interest in the relief offered by the Settlement, and there is no divergence of interests. *See* Ex. D (Class Counsel Decl.). As noted above, Plaintiffs and the Class's claims arise from the same conduct and turn on the same alleged conduct, and Plaintiffs, as proposed settlement class representatives seek remedies, equally applicable and beneficial to themselves and the entire Class.

Further, Plaintiffs, the proposed class representatives, are represented by qualified Class Counsel with extensive pertinent experience and expertise. *See* Ex. D (Class Counsel Decl.).

### B.   The Settlement Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

Predominance focuses on the cohesiveness of the proposed class. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Cohesiveness exists where questions of law or fact common to the class will turn on "the same evidence," *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016), and their resolution will "have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo*, 823 F.3d at 985 (quotation marks omitted). A common question of law or fact will predominate if "the addition or subtraction of any of the plaintiffs to or from the class [will] not have a substantial effect on the substance or quantity of evidence offered" to resolve that question. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quotation marks omitted).

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 113 S. Ct. 1184, 1191 (2013). A plaintiff is not required "to prove that each element of her claim is susceptible to classwide proof." *Id.* at 1196. Rather, she need only show that common questions will predominate with respect to her case as a whole. *Id.* In making this determination, the individualized nature of damage calculations alone cannot "preclude class certification." *Carriuolo*, 823 F.3d at 988 (collecting cases); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.").

Common fact and legal questions predominate here. The evidence necessary to prove liability for Plaintiffs' claims is the same as it would be for each Settlement Class Member. The

8

question whether Artnaturals failed to disclose the presence of benzene in its Products, in violation of applicable law, are not only common to the Class, but are the predominate consideration in deciding whether Artnaturals is liable to the Plaintiffs and the Class as a whole. *See, e.g.*, *Demsheck v. Ginn Dev. Co., LLC*, No. 3:09-CV-335-J-25TEM, 2013 WL 12177811, at *3 (M.D. Fla. Sept. 30, 2013) (common questions predominated because the "crux of all class members' claims" was allegation that defendant treated them identically in failing to provide them with information). Liability questions common to the Class substantially outweigh any possible individual issues. The claims of Plaintiffs and the Class are based on the same legal theories and the same conduct.

Further, resolution of the claims of Settlement Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue. Individual class members have little interest or motivation to prosecute their own claims for low-dollar retail products. *Navelski*, 2017 WL 1132569, at *18. By comparison, the Settlement will result in substantial, timely, and real monetary relief for purchases and medical monitoring. Under these circumstances, use of the class mechanism is the superior alternative for resolving this dispute as it will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979). After all, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

## II.     THE NOTICE PROGRAM IS APPROPRIATE

For due process purposes, notice to class members must be reasonably calculated to reach absent class members. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341-42 (S.D. Fla. 2011). The notice contemplated by the settlement here is reasonably calculated to reach Settlement Class Members and to inform them of the necessary information.

The parties have agreed to select Angeion Group as settlement administrator to effectuate the class notice and the claims process, and oversee the settlement fund. *See* Ex. A at p.16. The administrator's costs will be paid from the settlement fund. Ex. A at p.16. As discussed *supra*, the notice program includes nationwide publication notice designed to maximize outreach to potential class members. The contents of the proposed short-form and long-form notices (*see* Exs. B-C),

adequately apprises Settlement Class Members of (i) the class definition, (ii) the nature of this action, (iii) the key terms of the Settlement, (iv) how to obtain additional information about the Settlement, (v) their rights to participate or opt-out and the deadlines for each, (vi) the scope of the release, (vii) the attorneys' fees and costs that may be sought, and that Court approval is necessary, and (viii) provides the time and location for the Final Approval Hearing, along with a description of same. *See* Manual for Complex Litigation (Fourth), § 21.312 (outlining notice considerations); *see also Greco v. Ginn Devel. Co., LLC*, 635 F. App'x 628, 6234 (11th Cir. 2015) (collecting cases on similar notice programs).

Given the foregoing, the Court should approve the form and content of the proposed notices (Exs. B-C) and direct the administrator to effectuate the notice program as contemplated in the Settlement.

### III. PROPOSED SCHEDULE OF EVENTS

Plaintiffs attach an agreed-upon proposed preliminary approval order to this Motion which sets forth the pertinent dates for the approval, notice, claims submission, exclusion requests, opt-out requests, Plaintiffs' motion for attorneys' fees and costs, objections, and final approval. *See* Ex. E (proposed order).

### IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court preliminarily approve the class action settlement, conditionally certify the Settlement Class, approve the notice program, and enter the proposed preliminary approval order accompanying this unopposed Motion.

Dated: May 12, 2023

Respectfully submitted,

*/s/ George T. Williamson*
GEORGE T. WILLIAMSON
FARR, FARR, EMERICH, HACKETT
 & CARR, P.A.
99 Nesbit Street
Punta Gorda, FL 33950
941-639-1158
gwilliamson@farr.com

Daniel Nigh
NIGH, GOLDENBERG, RASO & VAUGHN, PLLC
14 Ridge Square NW, Third Floor
Washington, DC 20016

850-600-8090
dnigh@nighgoldenberg.com

Ruben Honik (*pro hac vice*)
David J. Stanoch (*pro hac vice*)
HONIK LAW LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(267) 435-1300
ruben@honiklaw.com
david@honiklaw.com

Conlee S. Whiteley (*pro hac vice*)
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
 (504)-524-5777
c.whiteley@kanner-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system.

/s/ *George T. Williamson*
George T. Williamson