## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-60643-CIV-ALTMAN/Hunt

ZELDA BRODOWICZ, DEREK ELLIS,
and HAROLD NYANJOM, individually and
on behalf of all others similarly situated,

       Plaintiffs,

v.

VIRGIN SCENT, INC., d/b/a ARTNATURALS,
INC., and WALMART, INC.,

       Defendants.

_____/

### PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT

      Plaintiffs Zelda Brodowicz, Derek Ellis, and Harold Nyanjom ("Plaintiffs"), by and through the undersigned attorneys, move for final approval of their revised class action settlement with Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals").  Defendants do not oppose this motion.

### I.    INTRODUCTION

      This is a putative class action concerning the sale of hand sanitizer products (the "Products") made and distributed by Defendant Artnaturals.  It was commenced on March 24, 2021.  The parties reached a class settlement after nearly two years of litigation following multiple mediations.

      On May 23, 2023, this Court preliminarily approved the revised settlement agreement (the "Settlement"), *see* D.E. 88, and set the final approval hearing for September 20, 2023 at 2:00pm. *See* Dkt. Notation.  On the same day, the Court granted Plaintiffs' unopposed motion for attorneys' fees and costs.  *See* D.E. 89.  Per the Court's preliminary approval order, class notice by publication was disseminated to Class Members.  *See* Ex. A hereto (Notice Administrator Declaration).  The various online media publications resulted in millions of impressions.  *Id.*  There was active participation by those who filed claims.  *Id.*  A single request for exclusion was filed.  *Id.*  No objections were filed.  *Id.*  The penetration of the web-driven publication notice program was highly

successful, resulting in an approximate reach of 81.68% with an average frequency of 3.99 times each.  *Id.*  This exceeds the aspirational ~70% reach noted by the Federal Judicial Center.

Plaintiffs submit the Court should grant final approval because the Settlement provides substantial relief for the Settlement Class, and the Settlement's terms are fair, reasonable, and adequate.  The parties agreed to settle after years of contested litigation, including discovery and motions practice.  The Settlement resulted from extensive, arm's-length negotiations between experienced counsel well-versed in the facts and law, and was facilitated by two different third-party neutral meditators.

For these reasons, discussed more fully below, Plaintiffs respectfully ask the Court to grant Final Approval and enter Final Judgment.

## II.  BACKGROUND

### A.  Summary of Action

This same "Summary of Action" sub-section appeared in Plaintiffs' motion for preliminary approval.  Plaintiffs include it here again for completeness.

Defendant Virgin Scent, Inc. d/b/a Artnaturals, Inc. ("Artnaturals") manufactures and distributes, among other things, hand sanitizer products (the "Products").  SAC ¶ 11.  Defendant Walmart, Inc. ("Walmart") is a retailer that sold Arnaturals' Hand Sanitizer Products to consumers.  *Id.* ¶ 12.  Plaintiffs and other putative class members are persons who purchased Artnaturals' Products at Walmart and other locations.  *Id.* ¶¶ 1, 8-10.

Plaintiffs allege that hand sanitizers such as Artnaturals' Products are considered over-the-counter ("OTC") drugs.  SAC ¶ 3.  As such, the United States Food and Drug Administration ("FDA") regulates the sale of hand sanitizers.  *Id.* ¶¶ 3, 17-20.  Hand sanitizers must meet prescribed standards, comport to FDA-approved labeling, and are subject to current Good Manufacturing Practices ("cGMP") and state analogues governing quality and related procedures for manufacturing and sale.  *Id.* ¶ 20.

The SAC alleges that benzene is a hazardous genotoxic Group I human carcinogen. *Id.* ¶ 2.  Prior to 2020, Plaintiffs claim the FDA disallowed any benzene or similar ethanol-based impurities in hand sanitizers because of the public health risk.  *Id.* ¶ 42.  However, the COVID-19 pandemic created acute demand for hand sanitizers and other hygiene products.  *See, e.g.*, *id.* ¶ 4.  Because of the grave public health concern posed by COVID-19, and to ensure an adequate supply of hand sanitizer products for the American public, the FDA issued temporary interim guidance that allowed hand sanitizers to be sold even if they included certain amounts of benzene or other ethanol-related

impurities.  *Id.* ¶¶ 42-52.  The Second Amended Complaint alleges the FDA's interim limits did "not apply to hand sanitizer gel or foam products because different or additional ingredients may impact the quality and potency of the product."  *Id.* ¶ 51.  The FDA also stressed that any firm wishing to use ethanol-related substances in hand sanitizer products "should test the ethanol (or have a third party laboratory conduct testing) to identify the levels of impurities listed in the USP monograph as well as any other potentially harmful impurities that may be present given the manufacturing environment."  *Id.* ¶ 52.

On March 24, 2021, Valisure, an independent pharmacy submitted a Citizen Petition to the FDA concerning its testing of various hand sanitizers, including Defendants' Hand Sanitizer Products.  *Id.* ¶ 60.  Valisure's testing purportedly revealed benzene present at levels in the Products ranging from 2.2ppm to 16.1ppm.  *Id.* ¶ 65.  Subsequently, Artnaturals recalled the Products.

Plaintiffs' Second Amended Complaint seeks economic and other damages under various state law theories because, as alleged, each Plaintiff and putative class member purchased an adulterated, misbranded, and dangerous product that was essentially worthless due to Defendants' non-disclosures and other wrongful conduct, and which resulted in actual physical harm and increased the risk of cancer.  *See, e.g., id.* ¶¶ 5-7, 81-91, 111-907, & Wherefore Clause.

**B.    Overview of Settlement Terms**

This same "Overview of Settlement Terms" sub-section, except for the update on notice and attorneys' fees and costs, was included in Plaintiffs' motion for preliminary approval.  It is included here again for completeness.

***Settlement Class.***  The Settlement is comprised of the following settlement class:

> All persons in the United States who, since January 1, 2015 to the present, paid any amount of money for a Hand Sanitizer Product that was sold or otherwise distributed by Artnaturals, Inc.

D.E. 88, Ex. A at p.10.  Excluded from the Class are any judges and any member of such judges' immediate families, as well as persons who timely submit appropriate opt-out requests. *Id.* at p.10, 17.

***Relief.***  The Settlement provides that Artnaturals will create a settlement fund of $3,088,000.00.  *Id.* at p.11. From this amount, each Settlement Class Member will be entitled to receive a settlement payment (i) as compensation for purchases of the Products, and/or (ii) as compensation intended for medical monitoring for those who used the Products.  *Id.* at pp.11-12. Economic compensation for purchases is equal to actual amounts paid or, absent proof of purchase,

$5 per attested purchase. *Id.* at p.11. Medical monitoring compensation is up to $1,000 per claimant. *Id.* at p.12. Settlement Class Members will share pro rata in the proceeds remaining in the settlement fund, up to the prescribed maximums for each category (economic compensation and medical monitoring compensation). *Id.* at 21-23. Unclaimed funds (e.g., uncashed settlement payment checks) will be delivered to a charitable organization selected by the parties. *Id.* at p.23.

***Release.*** As consideration for the monetary relief under the Settlement, Defendants will receive a class-wide release as more specifically delineated in the settlement agreement with respect to any claim that was alleged or could have been alleged in this action. *Id.* at p.5. The claims against Defendants will be dismissed with prejudice. *Id.* at p.23. In addition, parties in a related action pending but stayed in the Central District of California, *Lauren Slaughter, et al. v. Virgin Scent, Inc.*, Consolidated Case No. 2:21-CV-02875-VAP-E (C.D. Cal.), will be dismissed as well. *Id.* The *Slaughter* plaintiffs signed onto the Settlement here, but otherwise are settling their individual, non-class claims separately with Artnaturals. *Id.*at p.27.

***Notice and Settlement Administration.*** The parties discuss the court-approved notice program in Part IV, *infra*.

***Attorneys' Fees and Costs.*** This Court already granted Plaintiffs' unopposed motion for attorneys' fees and costs on May 23, 2023. D.E. 89. The Settlement did not contemplate service awards, Plaintiffs did not seek any such awards in their unopposed motion, and the Court's order approving that motion did not grant any service awards.

**III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

A court should approve a settlement upon finding it is "fair, reasonable and adequate." Fed. R. Civ. P. 23 (e)(2); *see Leverso v. SouthTrust Bank of Al., N.A.*, 18 F.R.D. 1527, 1530 (11th Cir. 1994). When evaluating whether approval is appropriate, this Court recognizes that "public policy strongly favors the pretrial settlement of class action lawsuits." *Abercrombie v. TD Bank, N.A.*, No. 21-61376, 2022 WL 18779705, at *3 (S.D. Fla. Dec. 9, 2022) (cleaned up). In its evaluation, a court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Jairam v. Colourpop Cosmetics, LLC*, No. 19-CV-62438, 2020 WL 5848620, at *5 (S.D. Fla. Oct. 1, 2020) (internal quotation marks and citation omitted).

The Eleventh Circuit has identified six factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement:

(1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement.

*Abercrombie*, 2022 WL 18779705, at *5 (internal quotations marks and citation omitted).

### A.    The Settlement Is Presumptively Fair

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002).  This is due in part to "[p]ublic policy strongly favor[ing] the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992).  Here, experienced counsel for both sides, well-versed in the strengths and weaknesses in this case based on extensive motions practice and discovery, engaged two reputable neutral mediators, the Hon. Leo S. Papas, Ret. and thereafter, the Hon. Wayne Anderson, Ret., to assist them reach a potential global resolution of all issues as between the parties.  *See* D.E. 88, Ex. D (Class Counsel Decl.).  This effort eventually resulted in the settlement, and as such the settlement carries a presumption of fairness given its arm's-length negotiation.  *See, e.g.*, *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007) ("the court must rely on the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its judgment for that of counsel").

### B.    Application of the Eleventh Circuit's Factors Warrants Final Approval

In addition to being entitled to a presumption of fairness, all of the Eleventh Circuit's factors favor final approval as well.  The first factor ("existence of fraud or collusion among the parties in reaching the settlement") favors final approval.  As detailed in the unopposed motion for preliminary approval, the Settlement represents significant value for the Settlement Class achieved through arm's-length negotiations by experienced counsel with the assistance of two third-party neutral mediators, the Hon. Leo S. Papas, Ret. and the Hon. Wayne Anderson, Ret.  *See* D.E. 88, Ex. D (Class Counsel Decl.).  There is no inkling of collusion or fraud amongst the parties.  Thus, this factor weighs in favor of final approval.  *See, e.g.*, *Abercrombie*, 2022 WL 18779705, at *5; *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 19-00550, 2020 WL 2517766, at *3 (M.D. Fla. Apr. 23, 2020).

The second factor ("the complexity, expense, and duration of the litigation") and the fourth factor ("probability of the plaintiff's success on the merits") both weigh in favor of final approval as

well. "Settlements of complex cases contribute greatly to the efficient use of judicial resources and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). Continued litigation of this Action would be lengthy, complex, and costly. Were this case to be litigated further, the parties would need to engage in rigorous additional discovery (recall that the parties' depositions were to be scheduled but had yet to occur), as well as certain third-party discovery. The parties would need to engage in time-consuming and expensive class certification and summary judgment briefing, and any appeals attendant to those eventual rulings. *See, e.g.*, *Abercrombie*, 2022 WL 18779705, at *5. And trial itself would involve complicated issues to be presented over many days. All of this would require significant time and expense, and while Plaintiffs and their counsel remain committed to their claims, they are also aware that there is no guarantee of success and that substantial obstacles exist to finality. Further, the non-prevailing party would likely appeal an adverse judgment, which would further lengthen matters.

All of this continued litigation and potential appeals would delay any recovery for Settlement Class Members, and in fact there is absolutely no guarantee they would receive any recovery. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093, 1993 WL 19915, at *6 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. . . .It is possible that trial on the merits would result in . . . no relief for the class members. . . . Based on . . . the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement...is a fair and reasonable compromise."). The Settlement, on the other hand, provides substantial and immediate benefits for the Class, undiminished by further expenses and without the risk and uncertainty of continued litigation. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349-50.

As to the third factor ("the stage of proceedings"), the parties and the mediators were informed of the key facts in this case because substantial document and data discovery took place prior to settlement. These facts informed the strengths and weaknesses of each side's claims or defenses, which were in turn incorporated into the parties' and mediators' efforts during settlement negotiations. *See, e.g.*, *Abercrombie*, 2022 WL 18779705, at *5-6.

The fifth factor ("range of possible recovery") also favors final approval. The settlement amount in this case, $3,088,000, is consistent with many class settlements of cases involving consumer products, including recent benzene-contaminated consumer product class settlements in particular. *See, e.g.*, *Goldstein v. Henkel Corp.*, No. 22-cv-00164 (D. Conn.) (Right Guard aerosol antiperspirant products nationwide class settlement involving alleged benzene contamination,

$1.95M common fund, final approval hearing set for December 13, 2023); *Evans v. Church & Dwight Co., Inc.*, No. 1:22-cv-06301 (N.D. Ill.) (Batiste dry shampoo products nationwide class settlement involving alleged benzene contamination, $2.5M common fund and $600,000 in vouchers, final approval hearing set for October 16, 2023); *Delcid v. TCP HOT Acquisition LLC & Idelle Labs, Ltd.*, No. 21-cv-9569 (S.D.N.Y.) (Sure/Brut aerosol antiperspirant products nationwide class settlement involving alleged benzene contamination, $3.65M common fund, final approval granted March 13, 2023); *In re J&J Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3015, 2013 WL 2284684, at * (S.D. Fla. Feb. 2023) (J&J aerosol sunscreen products nationwide class settlement involving alleged benzene contamination, $1.75M common fund and continuation of recall and refund program, final approval granted February 28, 2023); *Bangoura v. Beirsdorf, Inc.*, No. 22-cv-00291 (E.D.N.Y.) (Coppertone aerosol sunscreen products nationwide class settlement involving alleged benzene contamination, $2.3M common fund, final approval granted January 5, 2023).

Finally, the sixth factor ("opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement"), strongly favors the Settlement and final approval as well.  As noted previously, both sides' counsel are very experienced, and were armed with substantial discovery prior to reaching a settlement.  Moreover, the Settlement Class's reaction to the Settlement was very favorable.  Approximately two million claims forms were submitted (pending claims verification for eligibility, to weed out duplicates, etc.).  Only one request for exclusion was received.  Not a single objection was filed.  This strongly militates in favor of final approval.  *See, e.g.*, *Abercrombie*, 2022 WL 18779705, at *6 ("great weight" given to the lack of opposition to a settlement); *Jariam*, 2020 WL 5848620, at *7 ("Here, there were no objections filed to the Settlement. This lack of opposition weighs strongly in favor of the Court's approval of the Agreement."); *M.D. v. Centene Corp.*, No. 18-cv-22372, 2020 WL 7585033, at *7 (S.D. Fla. June 12, 2020) ("After Notice was provided, there were no objections to the Settlement and only one opt-out request was received. This positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement.").

## IV.    THE NOTICE PROGRAM AND CLAIMS PROCESS WERE SUCCESSFUL

For due process purposes, notice to class members must be reasonably calculated to reach absent class members.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341-42 (S.D. Fla. 2011).  The notice provided by the settlement here was reasonably calculated to

reach Settlement Class Members and to apprise them of the information necessary to determine whether to participate, exclude themselves, or object.

The parties' chosen administrator, Angeion, successfully developed and administered the Notice Program to efficiently and adequately notify the class and administer claims. The short-form and long-form notices informed members of (i) the nature of the action; (ii) who is in the certified class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The language of the Notice was designed to be plain and easy to understand and provided neutral and objective information about the nature of the Settlement.  This program satisfied due process, and is consistent with programs approved by other courts.  *See, e.g.*, *Ferron v. Kraft Heinz Foods Co.*, No. 20-cv-62136, 2021 WL 2940240, at *6-7 (S.D. Fla. July 13, 2021).

During the notice program, Angeion logged a robust response from potential Settlement Class Members.  There were approximately 90.1 million impressions from the online media publication campaign.  Ex. A (Angeion Decl.) at ¶ 32. Three hard-copy claims packages were sent to potential claimants upon their request.  *Id.* ¶ 35.  Approximately 2.1 million claims forms were submitted, pending eligibility determination and verification.  *Id.* ¶ 34.  The Administrator will provide Class Counsel further information by way of a supplemental declaration to share at the final approval hearing about the valid claim count and estimated award amounts.  *Id.*  ¶ 36.  By any measure, this is a successful result.

## V.    FAIRNESS HEARING

Plaintiffs will be prepared to further present and discuss the Settlement, Notice Program, and claims administration process during the Fairness Hearing, currently scheduled for September 20, 2023 at 2:00pm at which time Class Counsel will request that the Court enter a Final Approval Order as to the Settlement.  *See* Dkt. Notation.

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant final approval of the Settlement, confirm certification of the Settlement Class, and enter the attached proposed final approval order and final judgment.

Dated:  September 6, 2023

Respectfully submitted,

*/s/ George T. Williamson*
GEORGE T. WILLIAMSON
FARR, FARR, EMERICH, HACKETT
  & CARR, P.A.
99 Nesbit Street
Punta Gorda, FL 33950
941-639-1158
gwilliamson@farr.com

Daniel Nigh
NIGH, GOLDENBERG, RASO & VAUGHN, PLLC
14 Ridge Square NW, Third Floor
Washington, DC 20016
850-600-8090
dnigh@nighgoldenberg.com

Ruben Honik (*pro hac vice*)
David J. Stanoch (*pro hac vice*)
HONIK LAW LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(267) 435-1300
ruben@honiklaw.com
david@honiklaw.com

Conlee S. Whiteley (*pro hac vice*)
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
 (504)-524-5777
c.whiteley@kanner-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of September, 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system.

*/s/ George T. Williamson*
George T. Williamson
